UNITED STATES, Appellee

v.

Ardolfo MUNOZ, Staff Sergeant, U.S. Army, Appellant.

No. 64,268.
CM 8901236.

U.S. Court of Military Appeals.

Argued Dec. 17, 1990.

Decided June 14, 1991.

For Appellant: *Captain Mark L. Toole* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Allen F. Bareford* (on brief).

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Alfred F. Arquilla*

and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

During March of 1989 appellant was tried by a general court-martial composed of officer members at Fort Monmouth, New Jersey. Contrary to his pleas, he was found guilty of four specifications of committing indecent acts on his minor daughter, [A], in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement for 3 years, and forfeiture of $300 pay per month for 36 months. The sentence was approved by the convening authority on May 3, 1989. The Court of Military Review affirmed on January 3, 1990, in a short-form opinion.

This Court granted review 31 MJ 414 on the following two issues of law raised by appellate defense counsel:

I

WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE BY PERMITTING APPELLANT'S DAUGHTER [I] ... TO TESTIFY, OVER DEFENSE OBJECTION, REGARDING PRIOR ACTS OF UNCHARGED MISCONDUCT BY APPELLANT.

II

WHETHER EVIDENCE OF APPELLANT'S UNCHARGED MISCONDUCT OF SEXUAL ABUSE OF HIS DAUGHTER ... SHOULD HAVE BEEN EXCLUDED UNDER MILITARY RULE OF EVIDENCE 403.

We find no prejudicial abuse of discretion by the military judge in this case and affirm. *United States v. Castillo*, 29 MJ 145, 151 (CMA 1989). *See generally United States v. St. Pierre*, 812 F.2d 417, 420 (8th Cir.1987).

Appellant was found guilty of four specifications of indecent acts with his minor daughter, [A]. Two specifications alleged that he fondled her and placed his hands on her breasts and vagina. Two other specifications alleged that he fondled her and placed his hands on her breasts. The first two offenses allegedly occurred in his government quarters at Pirmasens, West Germany, during January 1987. The latter offenses purportedly occurred in Arizona and New Jersey in February 1987 and June 1988. [A] was around 10 or 11 years old at the time of these offenses, but she was 12 when she testified against her father. He also took the witness stand at this court-martial, but he denied that any sexual misconduct occurred.

Prior to this court-martial, the defense made a motion *in limine* to "preclude the admission of any evidence concerning alleged acts of sexual misconduct between the accused and his other daughters." The Government opposed this motion and asserted that such evidence was admissible in its case on the merits "to prove a common scheme or plan...." It specifically referred to the decision of this Court in *United States v. Mann*, 26 MJ 1 (CMA), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988).

The military judge questioned the Government concerning its proffer of evidence. The record states:

MJ: All right, for purposes of this motion that's what we're interested in. All right, now as far as [I] is concerned, she's going to say that at the age of 9–11, somewhere in that area, again, she was at home, there were other people at home and that the accused fondled her breasts. Is that right? What else is she going to testify to?

TC: And rubbed her vagina. *The government would certainly limit her testimony too, because there were acts of sodomy in this case. But the government would not elicit testimony as to those incidents due to the prejudicial potential and would limit it to the discussion of the offense.*

MJ: To similar offenses. Is that what you're trying to say?

TC: Yes, sir.

MJ: Okay.

DC: Your Honor, clearly that cannot be done because——

MJ: Oh, it can be done all right. It might not be a good thing to do.

Trial counsel later repeated to the military judge his theory of admissibility, as follows:

MJ: All right, would you state again what your view is, Captain Carey, with respect to, you're offering this for a common scheme or plan?

TC: Yes, Your Honor.

MJ: Okay, what's the theory?

TC: The theory is that Sergeant Munoz would drink alcohol, become intoxicated and then approach his daughters while they were alone in a room in the house, either the bedroom or the living room, and that family members either present in the house but another part of the house or out of the house entirely *and that the fondling would occur, rubbing of breasts and vagina, and* then always a statement afterwards that, "This is our secret. Don't tell anybody about that." That these would occur periodically. There was, of course, only the one instance with [AA] but there are multiple instances with [A] as charged and also with [I].

And again, the government cites the *Mann* case and the fact that the court excluded the evidence in that case I'm sure is not the deciding factor. Certainly it lays out the test. And in this case, unlike the *Mann* case, all the witnesses to the uncharged misconduct remember clearly what happened unlike in the *Mann* case.

(Emphasis added.)

The military judge initially deferred ruling on the motion. He subsequently ruled prior to pleas as follows:

MJ: All right, with respect to your motion on the testimony of the two witnesses, [AA] and [I], I find that the testimony of these two witnesses to be probative of a plan on the accused's part to sexually abuse his children and I find a nexus of time. The fact that

events were removed in time from the other does not undermine their relevance. Whether you have the same victim is an important component of the alleged plan. *The similarity of the acts; that is, the fondling of breasts and vagina;* the common situs of the commission in the home of the family; the age of the victims at the time; the fact that other people were present; the fact that the accused had been drinking are all matters of commonality that I've carefully considered.

I further find that based on the averments of counsel, that the uncharged misconduct is plain, clear and conclusive and I find that on balance, the probative value of the uncharged misconduct outweighs the prejudicial impact, whatever prejudicial impact it may have and that the evidence may be presented to show a plan on the part of the accused to sexually abuse his children.

Therefore, the motion is denied. We'll hear the plea at this time.

(Emphasis added.)

The victim, [A], subsequently testified at this court-martial and implicated appellant in the charged offenses. Defense counsel then renewed his objection to the expected testimony of [I] and [AA]. He asserted that the incidents they would relate were distinctly different from [A]'s testimony such that they were not evidence of a common plan or scheme. The military judge then heard the testimony of both of the victim's sisters out of the presence of the members. He then ruled as follows:

MJ: Okay, I'm going to reconsider my [ruling] and upon reconsideration I'm going to exclude [AA]'s testimony. The first sister. But for the reasons that I set out in my, because I think there's a 403 problem with that and I think upon hearing her testify and based on the fact [that it's] only one incident, I think that is susceptible to more prejudice than substance so I'm not going to allow that because I think there's a 403 problem. But I don't see

any problem with the testimony of the other sister, [I] and I'm going to allow that in for the reasons that I gave in the findings before.

The daughter, [I], then testified as follows before the members:

## DIRECT EXAMINATION

*(Questions by the prosecution):*

Q. Would you state your full name for the record?

A. [I].

\* \* \* \* \* \*

Q. And how old are you?

A. 24.

Q. Do you know the accused?

A. Yes.

Q. And how do you know him?

A. He's my father.

Q. Let me draw your attention back to when you were 8 or 9–11 years of age. You remember where you lived during that time?

A. West Fort Hood, Texas.

Q. Did you have any occasion during that period where your father may have touched you?

A. Several. Yes.

Q. Could you describe for us, please, how this first happened?

A. There was several times. Once my family was in, my sister and my mom were sitting in the living room and I was making popcorn in the kitchen. My father came in. He pulled my pants down, started fondling my vagina.

Q. How old were you at this time?

A. I guess 9 or 10.

Q. I'm sorry?

A. 9 or 10.

Q. And was anybody else in the kitchen besides you?

A. No.

Q. What time of day was this?

A. I'm not real sure. Late afternoon. Evening.

Q. Had your father been drinking?

A. Not——

Q. Do you recall?

A. Not at that time. No.

Q. What happened?

A. He was fondling my vagina. He did that for a little while and the next thing I knew he has his face to where he's, I don't know, touching my vagina with his tongue.

Q. How long did this last, this incident?

A. Oh, anywhere from about 10 minutes or so.

Q. Were there other instances during the age when you were 9–11 where these sorts of things happened?

A. Yes. Another time my sisters were outside in the backyard playing, I believe, mowi[ng] the lawn. My father took me into the storage shed and again started fondling my vagina and sodomized me.

Q. What do you mean by "sodomized"? I know it's difficult.

A. He had anal sex.

Q. Do you recall when you reached puberty?

A. About 10. It was early.

Q. Were there ever any instances where these sorts of things happened in your parents' bedroom?

A. Yeah, there's one time where he took me in there, showed me the Playboy, Hustler magazines of nude women in there and then he fondled my vagina a little bit and there was a knock at the door and it was my older sister, [D], and he stepped out of the room. She—I don't know what he did, but she came back later and took me out of the room and later on that evening he brought me back in there while they were either outside or watching TV and again started fondling my vagina and this time I was laying next to him completely nude and this lasted for a little while and then he proceeded to sodomize me again.

Q. Did he ever say anything to you about these acts during their occurrence or afterwards?

A. He always told me he loved me and that's why we were doing it and never to say anything because mom would really be mad with me and it would hurt her very much and would make her really angry.

Q. Did you ever tell anybody about this?

A. No, not while we were at Fort Hood.

Q. You said this happened several times to you there?

A. (Indicated an affirmative response.)

Q. Had your father been drinking during these periods?

A. Yeah, there's been quite a few occasions where he was. He would take me into the bathroom and fondle my vagina for a while and have oral sex with me and then turn me over and sodomize me.

Q. Were there instances, . . ., where he fondled you outside your clothing prior to progressing into the actual acts that you described?

A. When I was younger.

Q. And what did he do?

A. It would start out as a tickling game. He'd start on my stomach and then eventually worked down to my underwear, but it would be over my underwear.

Q. When did you first tell anybody that this had happened?

A. When we lived in Fort Riley, Kansas where he had made an attempt on my younger sister, [AA], and I believe it was that night that I told my older sister, [D], that he had also done this to me and not just one time.

 Our starting point in resolving the first granted issue is Mil.R.Evid. 404(b), Manual for Courts-Martial, United States, 1984. It states:

(b) *Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts* is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It *may, however, be admissible for other pur-poses, such as proof of* motive, opportunity, intent, preparation, *plan,* knowledge, identity, or absence of mistake or accident.

(Emphasis added.) The prosecutor's theory of admissibility for appellant's uncharged misconduct with [I] and [AA] was that it showed a plan on his part to sexually abuse his daughters at a young age. Consequently, he averred that the subsequent sexual misconduct with [A], in testimonial dispute at this court-martial, also probably occurred as individual manifestations of that same plan. *See United States v. Mann,* 26 MJ at 4; *United States v. Brannan,* 18 MJ 181, 183 (CMA 1984).

Appellant contends that the uncharged sexual misconduct evidence in this case did not show a "plan" but instead reflected "a generic description of familial sexual abuse." He asserts that it was nothing more than a collection of disparate acts which were remote in time and dissimilar in nature and circumstance. Furthermore, he expands upon his objection at trial and now contends that [I]'s actual testimony also exceeded the scope of the Government's initial proffer of evidence. This additional sexual-misconduct evidence, he asserts, reinforces the dissimilarity of the acts of uncharged misconduct to the charged offenses and rendered her testimony on these matters inadmissible.

The core of appellant's Mil.R.Evid. 404(b) argument is that the uncharged misconduct against [I] did not rationally reflect a plan on appellant's part to sexually abuse his daughters. *See generally United States v. Brannan, supra* at 183–84 (CMA 1984). The military judge rejected this contention specifically, noting significant elements of concurrence between the uncharged acts and the charged acts which suggested a common plan. *See generally* 2 Wigmore, *Evidence* §§ 304, 357(3), and 360 (Chadbourn rev.1979). The common factors were the age of the victim, the situs of the offenses, the circumstances surrounding their commission, and the fondling nature of the misconduct. On this basis we hold that the military judge did not abuse his

discretion in concluding that all the uncharged misconduct was "probative of a plan on appellant's part to sexually abuse his children." *United States v. Mann, supra* 26 MJ at 5. *Cf. United States v. Fawbush,* 900 F.2d 150, 151 (8th Cir.1990). *See generally* Mil.R.Evid. 401 and 402.

■ We must also reject appellant's particular claim of remoteness based on the occurrence of those acts at least 12 years earlier. *See generally United States v. Cuch,* 842 F.2d 1173, 1178 (10th Cir.1988). In this case the object of appellant's purported plan was the sexual abuse of his young daughters. Accordingly, the victim's age at the time of the offenses was the critical concern, not the period of time between the misconduct and the charged offenses. *United States v. Mann, supra; United States v. Hadley,* 918 F.2d 848, 851 (9th Cir.1990).

■ Moreover, this is not a case like *United States v. Ferguson,* 28 MJ 104 (CMA 1989), where the uncharged misconduct was offered for a purpose under Mil. R.Evid. 404(b) which was not a material issue in that case. *See United States v. Estabrook,* 774 F.2d 284, 287 (8th Cir.1985). *United States v. Gustafson,* 728 F.2d 1078, 1083 (8th Cir.), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). The critical issue here was the occurrence of the charged indecent acts, and evidence of appellant's plan to do such acts was probative on this point. *United States v. Mann, supra. See generally United States v. Beahm,* 664 F.2d 414, 417 (4th Cir.1981). Accordingly, we find no legal error in the military judge's ruling under Mil.R.Evid. 404(b). *See United States v. Orsburn,* 31 MJ 182, 187 (CMA 1990). *See generally Story v. Collins,* 920 F.2d 1247, 1254 (5th Cir.1991).

■ The more difficult problem in this case arises under the second granted issue. It stems particularly from the portion of [I]'s testimony concerning the more serious acts of sexual misconduct perpetrated upon her by appellant. She testified that her father orally and anally sodomized her on several occasions and attempted to sexually assault her sister, [AA], when they lived at Fort Riley. We note that trial counsel had earlier conceded that [I]'s testimony on the sodomies would not be adduced by the Government because of its potential for prejudice. Moreover, the judge ruled that testimony by [AA] concerning appellant's one-time attempt to sexually assault her would also not be admissible at this court-martial.

Admissibility of this testimony under Mil. R.Evid. 403 was highly questionable. Appellant was only charged with fondling his minor daughter. The uncharged acts of sodomy were clearly more egregious and more reprehensible than those acts or the uncharged acts of fondling. *See United States v. Fortenberry,* 860 F.2d 628, 632 (5th Cir.1988), *cert. denied,* — U.S. —, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991); *cf. United States v. Brooks,* 670 F. 2d 625, 628 (5th Cir.1982). A strong possibility of prejudice existed on this basis alone. *See generally* E. Imwinkelried, *Uncharged Misconduct Evidence* § 8:24 (1984). Nevertheless, for several reasons we find reversal of appellant's conviction is not required by admission of this potentially inflammatory uncharged-misconduct evidence. *United States v. Mann,* 26 MJ at 5. *Cf. United States v. Kinman,* 25 MJ 99 (CMA 1987).

Although not decisive, we must note that appellant did not object at the actual trial to [I]'s testimony about the sodomies on the basis that it exceeded the scope of trial counsel's earlier concession. In addition, he did not object to her testimony on the assault of [AA] on the basis that it violated the trial judge's earlier ruling barring [AA]'s testimony concerning this same incident. Finally, although he cited Mil.R. Evid. 403 in his earlier written motion objecting to [I]'s testimony, he did not clearly pursue this undue-prejudice objection at the time she actually presented her testimony to the judge or the members. His final oral objection to the sodomy evidence was predicated only on its dissimilarity to the charged actions of fondling such that it did not qualify for admission as evidence of a

plan under Mil.R.Evid. 404(b). *See United States v. Brannan*, 18 MJ at 184. Such defense inaction is at best puzzling and suggests waiver of his Mil.R.Evid. 403 claim. *See* Mil.R.Evid. 103(a)(1).

In any event, this failure to properly object to the additional testimony of [I] reflects recognition of the fact that continuation of this objection, once the uncharged fondling evidence was admitted, was clearly superfluous. The victim's (A's) testimony was already substantially corroborated by the showing of appellant's sex-abuse plan through the evidence of his repeated fondling of [I]. Admission of evidence of additional sexual misconduct of a more serious degree with [I] for this same purpose was simple overkill. *Cf. United States v. Ferguson*, 28 MJ at 109-10. Secondly, we note that a limiting instruction carefully delineating the proper use of all this uncharged misconduct evidence was given in this case.* *See United States v. St. Pierre, supra.* Accordingly, we are convinced that admission of this portion of [I]'s testimony did not substantially change the outcome of appellant's trial. Art. 59(a), UCMJ, 10 USC § 859(a); *United States v. Barnes*, 8 MJ 115 (CMA 1979).

The decision of the United States Army Court of Military Review is affirmed.

COX, Judge (concurring):

Senior Judge Everett leads off his attack on the majority opinion as follows:

> First, there simply is no theory at all within the scope of Mil.R.Evid. 404(b),

Manual for Courts–Martial, United States, 1984, under which *any* of the evidence of prior sexual abuse of appellant's other daughters is relevant. *See* Mil.R.Evid. 401 and 402.

At 366.

In my judgment, he is wrong. Evidence of similar sexual conduct, particularly deviant sexual conduct such as incest, is powerful circumstantial evidence which corroborates the testimony of the victim in many cases. *See* E. Imwinkelried, *Uncharged Misconduct Evidence* §§ 4:11—4:18 (1984).[1]

I recognize the dangerous and unfair prejudice that can flow from introduction of evidence of similar sexual behavior into the trial of a case. Thus, the military judge must decide whether the "probative value" of the evidence "is substantially outweighed by the danger of unfair prejudice." Mil.R.Evid. 403; *United States v. Reynolds*, 29 MJ 105, 109 (CMA 1989); S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* 362 (2d ed. 1986 & 1990 Supp.).

Here, the military judge was sensitive to his duties. Indeed, notwithstanding Senior Judge Everett's uncharacteristic attack on him, the military judge *excluded* other highly probative testimony of sexual acts performed by the accused on a third daughter. Perhaps I am reading a different record from my learned colleague, but I would never accuse this military judge of sitting "deaf and dumb." At 366. What I hear and see in this record is a father who

---

* Now with respect to the testimony of [I], evidence that the accused may have committed certain acts with her, which would be uncharged misconduct; that is, other criminal offenses which are not before you; that evidence may be considered by you for the independent purpose of its tendency, if any, to prove a plan or design of the accused to sexually molest his own children. Now, you may not consider that evidence, that is the evidence presented by [I], for any other purpose. And you may not conclude from that evidence that the accused is a bad person or has criminal tendencies and he, therefore, committed the offenses as charged. That evidence was not offered for that purpose and you may not use it for that purpose. You may, as I say, use it only for the limited purpose of its tendency, if any, to prove a plan or a

design by the accused to sexually molest his own children.

1. Professor Imwinkelried points out that many jurisdictions have permitted evidence of similar sexual behavior under the guise of "plan." He characterizes this as a "spurious plan." E. Imwinkelried, *Uncharged Misconduct Evidence* §§ 4:13 and 3:23 (1984). He seems to prefer the "intellectual honesty" of those jurisdictions which have carved out an exception to rules akin to Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984, in sexual prosecutions. *Id.* at § 4:14. I have some personal reservations about whether evidence about one's sexuality is really "character evidence." Or is it something else?

brutally and maliciously abused his daughters. Whether he abused them with his tongue or penis or by touching and fondling their private parts is of little consequence; it was his use of the children as objects to gratify his sexual desires which is in issue.[2]

Unfortunately, crimes of this nature are committed in secrecy and privacy. The children suffer not only from the abuse, but also from the effects of the prosecution *See United States v. Arruza,* 26 MJ 234, 238–39 (CMA 1988), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989). Where the evidence of *similar* sexual deviant behavior is proved by the Government, it is admissible against an accused.

EVERETT, Senior Judge (dissenting):

The incredibly explosive testimony of Isabelle Munoz has been handled by all parties at all stages of the litigation of this case with all the sensitivity of a prizefighter's glove-clad fists. First, trial counsel blithely ignored his own, self-expressed limitations that he had placed on the testimony he would seek from Isabelle; he not only permitted the inflammatory testimony to be uttered by his witness, but he also pursued its expansion and repetition. Second, the military judge—in classic hear-no-evil and say-no-evil fashion—sat deaf and dumb to the scene in front of him. Third, defense counsel—who, notwithstanding the majority opinion, quite clearly earlier had acted adequately to avoid the legal guillotine of waiver from falling on his client—sat bolted to his chair while Isabelle severed the jugular vein of his defense. Fourth, the Court of Military Review dismissed appellant's appeal with the indifference and nonchalance of a 6–line, short-form affirmance, without a hint of any of the nuances of this issue.

Finally, comes the opinion of the majority of this Court. Unfortunately, when faced with rules of evidence that require the delicate touch of a surgeon's scalpel, the majority instead has wielded a bludgeon in three critical respects.

I

First, there simply is no theory at all within the scope of Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984, under which *any* of the evidence of prior sexual abuse of appellant's other daughters is relevant. *See* Mil.R.Evid. 401 and 402. Where an accused does not dispute that an act occurred but does dispute that he was the culprit, modus-operandi evidence of prior acts by the accused that bear the same "signature" as the act in contest might be relevant to prove the accused's identity as the perpetrator. S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 362 (2d ed.1986) (hereafter Saltzburg). *E.g., United States v. Gamble,* 27 MJ 298 (CMA 1988); *United States v. Rappaport,* 22 MJ 445 (CMA 1986). Also, where an accused does not dispute that an act occurred but does dispute that he did so with a requisite intent or affirmatively insists that he did so by accident or as a result of mistake of fact, evidence of prior similar acts by an accused might be relevant to show the necessary intent or to rebut suggestions of accident or mistake of fact. Saltzburg, *supra; United States v. Mann,* 26 MJ 1 (CMA), *cert. denied,* 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988).

Here, however, appellant absolutely disputed the occurrence of the acts themselves. In substance, he defended against the charges by asserting, quite simply, that none of the acts ever occurred. Under these circumstances, the only possible purpose of the evidence of prior acts that was

---

**2.** Senior Judge Everett also finds "no relevance at all" in "whether appellant sodomized one daughter 15 years earlier." At 368. I note that the drafters and sponsors (fourteen senators) of S.472, 102d Cong., 1st Sess. § 231 (1991), seem to find such relevance in their proposed new Fed.R.Evid. 414:

In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

used here would be to suggest: "He did it before, so you can believe the prosecutrix when she says that he did it again."

Yet, that is *precisely* the purpose to which such evidence may *not* be put. Mil. R.Evid. 404(b) begins unambiguously: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." *Accord* Mil.R.Evid. 404(a). "The principle at work is that specific acts may not be used to prove the kind of person someone is in order to show how he probably acted on a particular occasion." Saltzburg, *supra* at 361.

As the majority opinion points out, the stated prosecutorial purpose of the evidence was "to prove a common scheme or plan"—specifically, "to sexually abuse his daughters at a young age." At 360 and 363. *See United States v. Hicks*, 24 MJ 3 (CMA), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987). Embracing this theory, the majority finds that "[t]he common factors were the age of the victim, the situs of the offenses, the circumstances surrounding their commission, and the fondling nature of the misconduct." At 363.

In *Mann* I expressed my views that prior sexual acts with a sibling of the prosecutrix that had occurred 5 years earlier "were too remote in time and place to sustain the Government's theory of admissibility—namely, that they evidence a common scheme or plan." 26 MJ at 6 (Everett, C.J., concurring in part and dissenting in part). Of course, here, where the alleged prior acts had occurred *15* years before those charged—and, indeed, prior even to the *birth* of the prosecutrix—I perceive no relevance at all in such prior-acts evidence to prove a common scheme or plan. *See also United States v. Gamble, supra.*

Even apart from remoteness, I am considerably uncomfortable with the majority's conclusion that enough common factors existed between the charged offenses and the prior acts that a comparison demonstrates a common scheme or plan.

Actually, I believe that this case more closely resembles the situation we addressed in *United States v. Rappaport, supra*, where the accused—a psychologist—was charged with various acts relating to having sexual affairs with two patients; he admitted one—"maintaining that he fell in love with her"—but denied the other altogether. 22 MJ at 446. In rebuttal, the Government introduced testimony of a third woman who contended that, under circumstances in several ways similar to the charged incidents, the accused had had sexual intercourse with her, too. We wrote:

> The Government argues that this evidence was properly admitted for the purpose it was instructed upon at trial, that is, to prove that the accused engaged in an affair with Mrs. "S" as a part of a larger plan to take advantage of his female patients. We disagree. Evidence that the accused previously had a similar affair with one of his patients did not tend to establish a plan or overall scheme of which the charged offenses were part. *It tended to establish propensity, not plan.*

*Id.* at 447 (citations omitted; emphasis added).

## II

Second, if *any* of the prior-acts testimony was admissible, it was limited to testimony as to acts that were similar to the ones charged. Trial counsel recognized that this did not include evidence as to prior sodomy—acts not at all similar to those charged and acts that are so much more serious than those charged as to trample upon any notion that such evidence would be more probative than it would be unfairly prejudicial, *see* Mil.R.Evid. 403. Accepting the prosecutor's assurance that he would so limit the witness' testimony, the military judge ruled that he would permit the evidence. Of course, as the majority opinion makes clear, both the prosecutor and the military judge ignored this limitation when the witness expanded her testimony to ad-

dress, repeatedly, instances of sodomy on her by appellant.

Only if one expands the "common scheme or plan" concept to one that embraces *all* sexual misconduct by an accused on his children can this evidence of sodomy be deemed within Mil.R.Evid. 404(b). However, *none* of our prior cases represents such an expansive view of common scheme or plan. *Cf. United States v. Rappaport, supra.* Even in *Mann,* the majority took pains to couple closely the nature of the challenged evidence to the nature of the crimes charged. The majority's expansion of this doctrine in this case to include the sodomy evidence contravenes the expressed limitations in Mil.R.Evid. 404(a) and (b). Quite simply, whether appellant sodomized one daughter 15 years earlier has no relevance at all to whether he fondled another daughter as charged.

Even under the majority's notion of the relevance of this evidence, if *ever* there was an instance in which Mil.R.Evid. 403 appropriately ought to have precluded admission of the sodomy evidence, it is here. This is the sort of situation that the authors of the *Military Rules of Evidence Manual* must have had in mind when they warned:

> Any time the prosecution attempts to offer other acts of the accused as part of its substantive proof there is a very real problem of prejudice.... No matter how carefully the court-members are instructed that the evidence is not to be used for a determination of whether the accused is a good or bad person, there is a possibility of misuse. The worse the act, the greater the chance that court-members may lose sympathy for the accused and decide against him because he is a bad person—something that the law does not allow.

*Id.* at 361.

Accordingly, the authors admonished:

> The factors mentioned above highlight why Rule 403's balance is so important in connection with Rule 404(b) holdings. In deciding whether to admit or to exclude evidence, trial judges should be aware of the constant danger of prejudice and should pay close attention to the kind of act that is to be proved.

*Id.* at 362 (footnote omitted).

## III

Finally, I cannot imagine how the majority arrived at its conclusion that appellant's trial defense counsel waived his objections to the challenged evidence because, during the witness' testimony, he did not *renew* his earlier objection. Apparently my Brothers forgot what they had written much earlier in their opinion: "Prior to this court-martial, the defense made a motion in limine to 'preclude the admission of any evidence concerning alleged acts of sexual misconduct between the accused and his other daughters.'" At 360.

Keep in mind that, in response to this objection to *any* evidence of sexual misconduct with other daughters, the military judge entered a *partial* ruling that evidence of *fondling* would be admissible; he did not enter a ruling on the objection to the remainder of the evidence because trial counsel himself represented that he would not offer it. While defense counsel's silence during the testimony when the sodomy evidence came out may not have been the model of advocacy, it most certainly did not amount to waiver: His objection to *any* evidence of this nature was clearly on record—all that Mil.R.Evid. 103 requires. *See United States v. Ciulla,* 32 MJ 186, 188 (CMA 1991) (Everett, S.J., concurring in part and dissenting in part).

In *United States v. Gamble,* 27 MJ at 305-07, we discussed at some length the legitimacy of motions *in limine* regarding admissibility of evidence similar to that in issue here. We discussed, as well, what need there was for counsel—who had received an adverse ruling in response to his motion *in limine*—to pop up during the subject testimony and lodge an objection, else risk being found to have waived the matter for appellate review. After acknowledging that the military judge could decline to rule finally on such a motion

because of possible uncertainty as to how the trial might unfold, we wrote:

> If he [the military judge] does rule, however, and if his ruling leaves no doubt that he intends for it to be final, then it is final for purposes of appellate review. Insisting on a subsequent defense objection at the time the evidence is offered in order to preserve the issue for appeal would be a classic insistence on form over substance.

*Id.* at 307 (footnote omitted).

In some courts decades ago, it was necessary that, in order to preserve an overruled objection, an attorney had to move to strike the answer to the question to which the objection had been filed. Obviously, this requirement wasted time and tended to disrupt the witness' testimony. I hope that the majority does not intend to commit military justice to the same meaningless formalism. I would have thought that we resolved this matter in *Gamble*.

## IV

Appellant was the victim of major evidentiary error. Accordingly, he should receive a full rehearing.