UNITED STATES

v.

**Master Sergeant Henry A. RUPPEL,
FR213–50–6803 United States
Air Force.**

**ACM 31891.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 March 1995.

Decided 7 Feb. 1997.

Appellate Counsel for Appellant: Captain Harold M. Vaught (argued), Colonel Jay L. Cohen, Colonel David W. Madsen, and Lieutenant Colonel Kim L. Sheffield.

Appellate Counsel for the United States: Captain Deborah M. Carr (argued), Colonel Jeffery T. Infelise, and Lieutenant Colonel Michael J. Breslin.

Before DIXON, SCHREIER, and STARR, Appellate Military Judges.

## OPINION OF THE COURT

SCHREIER, Senior Judge:

Contrary to his pleas, members convicted appellant of sodomy with CH, his minor stepdaughter, one specification of indecent acts by licking her vagina and digitally penetrating her vagina, one specification of masturbating in front of her, and one specification of showing her pornographic movies. He was also convicted of one specification of an indecent act with JR, his natural daughter, by placing her hand on his penis. He was sentenced to a bad-conduct discharge, confinement for 7 years, forfeiture of $400 pay per month for 7 years, and reduction to E–1. Appellant asserts 12 assignments of error. We grant relief to correct two errors in the convening authority's action, but otherwise affirm the findings and sentence.

This case has a rather convoluted history. At his initial trial in June 1993, appellant was

convicted of sodomy with CH, three specifications of indecent acts or indecent liberties with CH, and one specification of an indecent act with JR. Through his post-trial RULES FOR COURTS-MARTIAL (R.C.M.) 1105/1106 submissions, appellant claimed that the government failed to provide requested discovery materials. The convening authority ordered a *DuBay* hearing to investigate these concerns. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967). This hearing was held in March 1994 with both sides presenting extensive evidence, both documentary and testimonial. The military judge determined that requested discovery materials concerning CH were not provided and recommended a new trial for the allegations concerning only appellant's step-daughter. The convening authority disapproved the findings of guilty for the charges pertaining to CH and ordered a new trial. Additionally, he approved a finding of guilty to an allegation of an indecent act with JR but ordered a rehearing on sentence.

The retrial began in October 1994. However, by this time more materials were found which were responsive to the original discovery requests. Further delays occurred and the court-martial resumed in February 1995.

## BACKGROUND

In December 1990, appellant married Armelle H who had two children, CH and JH. This was appellant's second marriage. One evening a friend was visiting appellant's home while Armelle was at work. He observed appellant entering CH's room three times after he put her to bed and closing the door each time. He considered this behavior suspicious and subsequently reported it to Armelle the next morning. Armelle immediately went to the school bus stop and asked CH if appellant was doing anything to her. CH told her mother that appellant was touching her. In return, he was letting her smoke and drink and point her middle finger in the air. At this time CH was seven years old. A joint civilian and military investigation followed.

As part of this investigation, agents of the Air Force Office of Special Investigations (AFOSI) contacted appellant's daughter, JR,

from his first marriage. She described an incident which occurred in 1989 when she was 11 years old. At that time, appellant was divorced from his first wife and had custody of their two children, JR and BR. JR stated there was one time when appellant took her hand and placed it on his penis. During an investigation of the incident in 1989, she downplayed it and described it as an accident. The Department of Human Services records confirmed an investigation into allegations of sexual abuse in 1989. There were no charges and custody was transferred to the mother. However, during the 1992 inquiry JR described the sexual assault in more graphic terms. At a later point she also described a "dream" where she performed sodomy on appellant.

Appellant was charged with committing an indecent act with JR, sodomy of JR, and sodomy, indecent acts, and indecent liberties with CH. At the initial trial in 1993, appellant was convicted of the offenses of sodomy with CH, indecent acts and indecent liberties with CH, and one specification of an indecent act with JR. Appellant was acquitted of the specification alleging sodomy with JR and one indecent acts specification involving CH.

The convening authority subsequently disapproved the findings of guilty for the charges involving CH and ordered those charges retried on the merits. He approved the finding of guilty for the indecent act specification involving JR but ordered a rehearing on the sentence only.

## ADMISSIBILITY OF EVIDENCE UNDER R.C.M. 810(a)(3) and MIL. R. EVID. 404(b)

During the appellant's retrial, the prosecution sought to introduce the testimony of appellant's daughter, JR, on the merits. The prosecution argued that her testimony concerning the single incident when appellant placed her hand on his penis was admissible as evidence of a continuing scheme or plan by appellant to commit sexual abuse with female children subject to his control. The defense opposed the introduction of this evidence arguing that a retrial on findings should proceed without reference to any offenses being reheard on sentence only,

R.C.M. 810(a)(3), and that it was not admissible under MIL.R.EVID. 404(b).

The military judge found that the evidence was admissible but prohibited any mention of the prior court-martial or appellant's conviction for the indecent act involving JR. He found seven common factors between the incidents involving the two victims and concluded that there was evidence of a plan "to engage in indecent acts with his daughters . . . ."

■ R.C.M. 810 governs the procedures for rehearings. It provides that:

[w]hen a rehearing on sentence is combined with a trial on the merits of one or more specifications referred to the court-martial, whether or not such the specifications are being tried for the first time or reheard, the trial will proceed first on the merits, without reference to the offenses being reheard on sentence only.

R.C.M. 810(a)(3).

Appellant urges that the plain language of the rule prohibits any mention whatsoever of, not just the conviction from the earlier trial, but also the underlying basis for the conviction. We disagree. Neither counsel nor our own research located any case law directly on point. Therefore, we will look at the interpretation of similar provisions.

The rule governing mixed pleas provides that "the military judge should ordinarily defer informing the members of the offenses to which the accused has pleaded guilty until after the findings on the remaining contested issues have been entered." R.C.M. 913(a). One purpose of this rule is to preserve the presumption of innocence before the court members. *See United States v. Rivera*, 23 M.J. 89 (C.M.A.1986). We believe the same logic applies in analyzing the rule regarding retrials. The court members will not be informed of the prior conviction to avoid any potential prejudice in their deliberations on findings.

However, the mixed plea rule does not preclude the admissibility of any evidence surrounding the offense to which the accused pled guilty. "Regardless of the plea, the evidence establishing the accused's misconduct can be received if it qualifies for admission under MIL. R. EVID. 404(b) and is not unduly prejudicial under MIL. R. EVID. 403." *United States v. Rivera*, 23 M.J. at 96. We find that a similar logic applies in interpreting the retrial rule. For example, suppose the alleged misconduct involving JR was not tried at the first trial but was subsequently discovered. If the evidence were otherwise admissible, the prosecutor would be able to introduce that evidence at the retrial. Why should the result be any different because the accused was convicted of the misconduct at the first trial? Our efforts to ensure a fair retrial should not provide a windfall to an accused by excluding evidence that is otherwise admissible but was the subject of a conviction at the earlier trial. The purpose of the rule is served by preventing any mention of the prior conviction. Therefore, we conclude that a common sense approach to R.C.M. 810 does not prohibit the introduction of otherwise admissible evidence concerning the underlying basis for the offense being reheard on sentence only.

■ Next, we must determine if the proffered evidence was otherwise admissible under MIL. R. EVID. 404(b).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

MIL. R. EVID. 404(b). The Court of Criminal Appeals for the Armed Forces has approved the admissibility of testimony concerning the uncharged sexual abuse of one daughter during an accused's court-martial for sexual abuse of another daughter. *United States v. Munoz*, 32 M.J. 359 (C.M.A.1991). That Court found several common factors such as the age of the child, the location of the offenses, the circumstances surrounding the offenses, and the fondling nature of the misconduct which supported the admissibility of the evidence as probative of a plan to sexually abuse his children. *Munoz*, 32 M.J. at 363.

At trial, the defense counsel argued that JR's testimony was inadmissible because of the numerous dissimilarities between the incidents involving the two girls. JR testified to a single incident of abuse. She stated that one night in 1989 when she was about 11 years old while sleeping with her father he took her hand and briefly placed it on his penis. CH testified to numerous incidents of abuse beginning in 1992 when she was about six years old involving oral sodomy, digital penetration, masturbation and viewing pornographic movies.

Despite these dissimilarities, the military judge found sufficient similarities to admit the testimony. Both incidents involved the sexual abuse of a prepubescent girl within the home when the mother was not present. Both incidents began with touching.

The standard of review on issues of admissibility of evidence is whether the military judge abused his broad discretion. *United States v. Nixon*, 30 M.J. 501, 503 (A.F.C.M.R.1989), *pet. denied*, 31 M.J. 435 (C.M.A.1990). To find an abuse of discretion, the challenged action must be arbitrary, clearly erroneous, or clearly unreasonable. *United States v. Travers*, 25 M.J. 61 (C.M.A. 1987). While other military judges may have decided this matter differently, there was no abuse of discretion. The differences between the incidents can largely be attributed to the fact that the incident with JR occurred only once before she stopped it, while there were multiple incidents involving CH thus allowing for divers methods of abuse. The critical issue is not how often the abuse occurred or the particular nature of the abuse, as defense contends, but the use of young girls as objects to gratify his sexual desires. *Munoz*, 32 M.J. at 366 (Judge Cox concurring).

■ Finally, defense argues, for the first time on appeal, that the proffered evidence was not admissible under MIL. R. EVID. 403 because of its prejudicial nature. We are unpersuaded that the admissibility of a single brief incident which the victim initially characterized as an accident and which was not prosecuted at the time was so unfairly prejudicial as to prevent its admissibility. There was no error in the admissibility of this evidence.

## CONSTITUTIONAL IMPLICATIONS OF JR'S TESTIMONY

Appellant again attacks the admissibility of JR's testimony as a violation of fairness and due process. This argument has its basis in the unique nature of this court-martial.

■ At the initial trial in 1993 appellant was charged with offenses involving both JR and CH. The defense moved to sever the charges to prevent any spillover from the offenses involving one child to the other child. The military judge refused to sever the charges, but gave a standard spillover instruction. He advised the members that each offense must stand on its own and that the members must keep the evidence of each offense separate. He further advised them that proof of one offense carries with it no inference that the accused is guilty of any other offense.

However, at the retrial the military judge advised the members that "[e]vidence that the accused may have sexually abused JR ... may be considered by you for the limited purpose of its tendency, if any, to: prove a plan or design of the accused to molest prepubescent girls...." Appellant argues that the instructions created an anomaly wherein at the first trial the members could not consider JR's testimony as impacting the charges involving CH while at the second trial they could. He argues that this violates fundamental fairness.

We find that appropriate instructions were given at both trials. The instructions correctly described the applicable law and the limitations on the court members' use of the evidence in the case. We conclude that the admission of JR's testimony did not result in a violation of fundamental fairness. We find no error.

## MULTIPLICITY OF INDECENT ACTS AND INDECENT LIBERTIES

■ Appellant argues, for the first time on appeal, that the three specifications alleging indecent acts and indecent liberties with CH are multiplicious. We reject his argument on two bases. First, multiplicity issues

584

are forfeited unless raised at trial. *United States v. Lloyd*, 43 M.J. 886, 887 (A.F.Ct. Crim.App.1995). Second, while indecent acts and indecent liberties with a child are alternative ways of committing one offense under Article 134, this does not prohibit separate convictions for factually discrete specifications. *United States v. Neblock*, 45 M.J. 191 (1996). Here, the challenged specifications allege divers occasions of touching CH's vagina, masturbating in her presence, and showing her pornographic movies. The acts occurred either on different occasions or at successive times on the same day. The offense of indecent acts or indecent liberties with a child is not "so continuous as a matter of law as to include all indecent acts or liberties with a single victim, without regard to their character, their interrupted nature, or the different times of their occurrence." *Neblock*, slip. op. at 19. We find that appellant's convictions for indecent acts and indecent liberties were not multiplicious.

## ADMISSIBILITY OF PORNOGRAPHIC VIDEOTAPES

### *Validity of Consent to Search and View the Tapes*

■ On the day appellant's wife reported the alleged offenses she gave investigators a videotape entitled *Skins Triple X*. During a consent search of the residence the next day, she surrendered another videotape labeled *Bad Girls, Taboo*, and *Seven Cartoons*. During trial, the government sought to introduce these tapes as evidence. The defense objected, arguing that appellant's wife had no authority to consent to law enforcement agents viewing the contents of the tapes. He distinguished her ability to give the tapes to the investigators and her ability to consent to the viewing of the tapes. He argued that the agents required an independent search warrant before viewing the tapes. *See Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). The military judge distinguished the *Walter* case and found that appellant's wife was lawfully entitled to turn the videos over to the agents and to consent to their viewing the tapes. *See United States v. Clow*, 26 M.J. 176 (C.M.A.1988). We concur and find no error.

*Prejudicial Impact versus Probative Value*

■ Next, appellant argues that the prejudicial impact of the highly inflammatory, graphic depictions of deviant sexual practices substantially outweighs the probative value of the videotapes. During trial, appellant did not object to the admissibility of the video tapes on this basis. As a general rule, failure to move to suppress evidence before the entry of pleas constitutes waiver. R.C.M. 905(b)(3); R.C.M. 905(e). Appellant attempts to overcome this general rule by arguing that the military judge committed plain error in admitting these videotapes. Plain error requires that both a substantial error occurred and that the error had an unfairly prejudicial impact on the case. *United States v. Strachan*, 35 M.J. 362, 364 (C.M.A.1992).

The videotapes were evidence that appellant showed CH pornographic movies as alleged in Charge II, specification 3. CH testified that she watched "dirty movies" with appellant. While her description of the cartoon movie may have been sufficiently graphic to show its pornographic nature, her description of the other movie was not. *See United States v. Miller*, 44 M.J. 549 (A.F.Ct. Crim.App.1996). Therefore, it was reasonable that the videotapes be admitted so that the members could determine if they were pornographic. We find the military judge did not err in admitting these videotapes, let alone commit plain error.

### *Improper Argument Based on the Videotapes*

■ Under this assignment of error, appellant also argues that the military judge committed plain error in failing to stop trial counsel's argument concerning the videotapes. He alleges that trial counsel argued facts not in evidence when trial counsel asserted that appellant used the videotapes to desensitize the victim to incestuous sexual relations. There was no objection to this argument at trial. Failure to object to improper argument constitutes waiver, absent plain error. *United States v. Travels*, 44 M.J. 654 (A.F.Ct.Crim.App.1996).

The evidence concerning the pornographic videotapes consisted of CH's testimony that she had watched "dirty movies" with appellant that showed cartoons and people "sexing." Furthermore, another witness identified the videotapes as ones possessed by appellant and described them as "worse than triple X-rated." Finally, appellant admitted that he had shown CH portions of a videotape to answer her questions about oral sex.

Appellant's argument appears to require the government to prove that CH saw the portions of the videotape showing incestuous relations before arguing that the tapes were used to desensitize her. We disagree. While the record does not clearly establish that CH viewed the portions of the videotapes revealing incestuous relations, we will not require the government to show hours of videotape to CH in an effort to have her identify those portions of the tapes appellant showed her. Rather, we find that cartoons depicting sexual matters as well as the tapes showing naked men and women engaging in sexual acts supports trial counsel's argument that the tapes were used to desensitize the victim. *United States v. Sawyer*, 32 M.J. 917, 920 (A.F.C.M.R.1991). There was no error.

### *EX PARTE* HEARING ON WITNESS REQUESTS

At trial appellant requested an *ex parte* hearing on the issue of defense witness production. Appellant argued that requiring him to process all witness requests through the trial counsel resulted in an unfair competitive advantage for the prosecution. He proposed bypassing trial counsel and going directly to the military judge in an *ex parte* proceeding. The military judge denied the request noting that the defense had already submitted to the court a brief synopsis of the requested defense witnesses. The military judge also found no provision in the MANUAL FOR COURTS-MARTIAL supporting appellant's request for an *ex parte* hearing. Appellant renews his argument before this Court.

R.C.M. 703(c)(2) requires the defense counsel to give trial counsel a written list of witnesses to be produced by the government. Trial counsel acts in an administrative capacity in processing the request on behalf of the convening authority. The military judge may review any witness requests denied by trial counsel. R.C.M. 703(c)(2)(D). While appellant may not like the procedure established by the President, we do not find the process fundamentally unfair. Military discovery rules provide for the disclosure of witnesses by both sides and further provide that counsel has the right to interview any witness prior to trial. R.C.M. 701(a)(3). Thus, the danger of tactical surprise is diminished under the military process. Furthermore, appellant has failed to show any specific prejudice to his substantial rights. His generalized complaint of unfair competitive advantage is not supported by specifics. We find that the military judge correctly denied appellant's request for an *ex parte* hearing to request the production of defense witnesses.

### SENTENCE CREDIT FOR PRETRIAL CONFINEMENT/RESTRICTION

At his retrial, appellant moved for sentence credit for two periods of time. First, he alleged that the 18 days he spent in the Inpatient Psychiatric Unit at Keesler AFB in 1992 was pretrial restriction tantamount to confinement. Next, he alleged that he is entitled to five-for-one sentence credit for the time he spent in confinement after the findings and sentence in his initial trial were set aside and before a new pretrial confinement hearing was conducted. The military judge at the initial trial granted appellant 18 days credit for the time spent in the inpatient psychiatric unit. The military judge at the retrial denied any sentence credit for the time spent in the inpatient psychiatric unit and granted two-for-one credit for the period following the convening authority's action in the first trial. Appellant argues this was error.

Initially, appellant alleges that the military judge at his retrial erred by not granting him credit for the time spent in the inpatient psychiatric unit. Appellant argues that his reporting to the inpatient psychiatric unit was not voluntary because it was a condition for his release from civilian confinement. We concur with the military judge's findings that appellant's actions were volun-

tary. Appellant could have rejected the conditions for his release from confinement by either remaining in confinement or by posting the $50,000.00 bond. No military or civilian authority ordered him to have a mental health evaluation. He was not in official detention during his hospitalization. Furthermore, the conditions of his inpatient care were no more onerous than necessary to protect his health. Appellant was treated no differently than any other patient in the psychiatric ward. He resided in the hospital on a 24–hour basis, could leave the facility with a special written pass, and had some restrictions on when he could make phone calls and when he could smoke. Appellant was not placed under armed guard, he was not physically restrained by handcuffs, and he was not in pretrial confinement or restriction after his release. We do not find the limitations on his freedom so onerous as to amount to pretrial restriction. The military judge did not abuse his discretion in denying appellant's request for pretrial confinement credit.

■ However, we cannot complete our analysis of this issue without a brief comment on appellant's claim that this decision is "unfair" because it is contrary to the ruling at the original trial. A retrial is a new ball game and the trial judge is not bound by the rulings of the first hearing. *See* R.C.M. 810(a)(1). We find no error.

■ Next, appellant alleges that he should receive five-for-one credit for his alleged illegal post-trial confinement. The convening authority disapproved appellant's findings and sentence on July 11th. However, appellant remained in jail with nothing happening in his case until July 29th when he was ordered into pretrial confinement. The military judge at the retrial gave appellant a two-for-one credit for the period from July 11th–29th. Appellant requests additional credit because of the "government's blatant disregard of keeping the appellant in prison despite the convening authority's order disapproving the appellant's sentence to confinement."

We recognize appellant's frustration with remaining in confinement after the convening authority disapproved the sentence. We further note that the government should have been prepared for the convening authority's action as it was based on the recommendations of the *DuBay* hearing and the Staff Judge Advocate's Recommendation (SJAR). More timely action was definitely possible in this case. However, we also consider the fact that appellant remained convicted of one offense. After evaluating all the circumstances of this case, we are persuaded that the military judge did not abuse his discretion in calculating a two-for-one sentence credit for this time period. *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A.1985); *United States v. Washington*, 42 M.J. 547, 563 (A.F.Ct.Crim.App.1995) (one-for-one credit approved for Article 13 violation).

## MILITARY JUDGE'S AUTHORITY TO ORDER A *DUBAY* HEARING

After appellant's original trial, the convening authority approved appellant's conviction of the indecent act specification involving JR but ordered a rehearing on sentence. The convening authority also disapproved the findings and sentence for the charges involving CH due to the government's failure to provide proper discovery. By the time of the retrial, additional materials involving JR were found which were arguably responsive to appellant's initial discovery request. Appellant argued that he was entitled to a rehearing on findings as well as sentencing for the charge involving JR. The military judge determined that he could not order a post-trial session to explore the issue because the record had already been authenticated. R.C.M. 1102(d). The military judge further ruled that he lacked the authority to order a new trial. R.C.M. 1210; Article 73, UCMJ.

■ We find the military judge did not err in refusing to order a post-trial session. Although the courts are taking an expansive view of a military judge's authority, that does not overcome the direct guidance in the RULES FOR COURTS-MARTIAL. Here, the record of the original trial had already been authenticated. In each of the cases cited by appellant, the record of trial had not been authenticated. *See United States v. Fisiorek*, 43 M.J. 244, 248 (1995); *United States v. Scaff*, 29 M.J. 60 (C.M.A.1989); *United*

States v. Griffith, 27 M.J. 42, 47 (C.M.A. 1988); United States v. Brickey, 16 M.J. 258 (C.M.A.1983). We further find the military judge lacked the authority to order a new trial. R.C.M. 1210 does not give the military judge the authority to order a new trial. There was no error.

## LEGAL AND FACTUAL SUFFICIENCY OF SODOMY CONVICTION

Appellant asserts that his conviction for sodomy can not stand because there is no proof of penetration. CH testified that appellant licked her private areas and that she licked his penis. She further stated that his penis tasted bad. This testimony is consistent with the statements she gave her treating pediatrician and clinical psychologist. However, these experts also testified to additional details concerning her sexual abuse which were not developed in CH's testimony. For example, the clinical psychologist testified that CH stated that when appellant licked her private areas it felt good, that CH had put her mouth on appellant's private area, and that appellant had put his mouth on CH's private area. The government urges that those statements are sufficient to infer penetration.

The standard of review for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." United States v. Turner, 25 M.J. 324, 324 (C.M.A.1987) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The standard for factual sufficiency is whether the members of this court are personally convinced beyond a reasonable doubt of appellant's guilt after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses. United States v. Turner, 25 M.J. 324, 324 (C.M.A. 1987).

■ The offense of sodomy requires evidence of some degree of penetration. United States v. Williams, 25 M.J. 854, 855 (A.F.C.M.R.1988) (licking the clitoris is sufficient to establish penetration in a guilty plea case). There must be some evidence, either circumstantial or interpretive, from which the court can conclude that penetration occurred. United States v. Milliren, 31 M.J. 664, 665 (A.F.C.M.R.1990) (licking neither proves nor disproves penetration). This Court has recently held that use of the terms oral intercourse or "blowjob" are sufficient to indicate penetration. United States v. Barrow, 42 M.J. 655, 665 (A.F.Ct.Crim.App. 1995), aff'd, 45 M.J. 478 (1997); United States v. Powell, 40 M.J. 768, 770 (A.F.C.M.R.1994). Likewise, the use of the term "oral sex" in combination with the terms licking and kissing is sufficient to prove penetration. United States v. Tu, 30 M.J. 587 (A.C.M.R.1990). The use of the term "licking" in a specification is sufficient to state an offense. See United States v. Cox, 18 M.J. 72, 73 (C.M.A.1984).

■ In this case, we resolve the issue based on a combination of our knowledge of human anatomy, the age of the child, and the descriptions of the events. Additionally, since the specification did not allege how the sodomy occurred, we will examine both possible scenarios to determine the sufficiency of the evidence. The victim's testimony in this area was very abbreviated; however, the testimony of the experts fleshed out the details supporting penetration.

The female sexual organs include both internal and external parts. United States v. Cox, 18 M.J. at 73. CH used the term private parts to describe her sexual organs. She stated that appellant placed his finger in her private parts and licked her private parts. This use of the same term implies that her reference to private parts referred to her internal, as well as her external, sexual organs. Furthermore, testimony from the clinical psychologist indicates that CH reported that appellant placed his mouth on her private parts. The common definition of the word "mouth" is the bodily opening through which animals ingest food. WEBSTER'S II, NEW RIVERSIDE UNIVERSITY DICTIONARY, 773 (1984). Thus if the opening of the mouth is placed on her private parts, the private parts are licked by the tongue, and private parts refers to both internal and external sexual organs, there is penetration.

Next, the child testified that she licked appellant's penis and it was a "bad thing." The experts testified that she stated that she put her mouth on his penis and it tasted "nasty" and "bad." CH did not say that she put her lips on his penis. Rather, she used the word mouth. Using the common understanding of the word mouth, if CH put her mouth on appellant's penis, there is a penetration of the lips. *See United States v. Cox,* 23 M.J. 808, 818 (N.M.C.M.R.1986) (penetration past lips but not past teeth is sufficient to prove sodomy). Furthermore, the use of the term mouth in connection with the fact that it tasted bad implies penetration. Finally, we are persuaded that when a child licks an adult penis, some part of the plane of the penis would necessarily penetrate her mouth.

Thus, we conclude that reasonable factfinders could have found evidence of penetration beyond a reasonable doubt. Moreover, we are convinced beyond a reasonable doubt that there was penetration. *United States v. Turner,* 25 M.J. at 325.

We cannot leave this issue without a reminder to trial practitioners to ask the simple, but sometimes awkward, questions to prove penetration. Had CH testified as she did at the first trial when she clearly stated that she sucked appellant's penis, we would not have to address this issue. Moreover, allowing the experts to use clinical terms like "oral-genital contact" deprives the fact finder of the specific language of the victim which, while crude or uneducated, may more accurately describe the event and prove penetration without question. The bottom line is we should not have to deal with this issue on appellate review.

## REMAINING ISSUES

Contrary to appellant's claim of error, we find that the military judge did not abuse his discretion in refusing to grant a new Article 32 investigation before the rehearing. *United States v. Marrie,* 39 M.J. 993, 997–98 (A.F.C.M.R.1994); R.C.M. 1107. Moreover, we find that appellant was not denied his due process rights to a fair trial. Appellant's general attack on the validity of his trial lacks merit. Few courts-martial are error

free. However, nothing in this case reaches a level that deprives appellant of his constitutional due process rights. Appellant has presented numerous issues to the military judges, the convening authority, and this Court. Each has been thoroughly reviewed and when necessary, corrective action has been taken. Appellant has received two trials, two different panels convicted him of various offenses, and he received a substantially lower sentence at the second trial. Appellant has been capably represented by both military and civilian counsel at trial level and on appeal. We find no violations to his substantive due process rights.

## ERRORS IN THE CONVENING AUTHORITY'S ACTION

██ The convening authority's action contains two errors which, in the interests of judicial economy, we will correct at this level. First, the action fails to provide 381 days credit for the portion of appellant's sentence served between the dates the sentence was initially adjudged and the date it was disapproved. R.C.M. 1107(f)(5)(A). In a similar case, the Court of Appeals for the Armed Forces returned the record of trial for a new action, in part, because the service court opinion did not order corrective action. *United States v. Stanford,* 37 M.J. 388 (C.M.A.1993). Therefore, in our concluding paragraph we will order the appropriate credit.

██ The next error is not quite so simple. At his initial trial appellant was found guilty of a specification alleging indecent acts with CH by exception. The members excepted the language "kissing her on the mouth while inserting his tongue in her mouth" from the specification. This specification was reheard absent the excepted language and members convicted appellant of the specification. However, the SJAR and the Report of Result of Trial incorrectly reported the language of the specification as including the excepted words describing a kiss. Appellant's lengthy response to the SJAR did not comment on this error. The general court-martial order and the convening authority's action also reflected the excepted language.

The convening authority implicitly approves the findings as reported in the staff judge advocate's recommendation unless some intervening factor leads to a different determination. *United States v. Diaz,* 40 M.J. 335, 343 (C.M.A.1994). In *Diaz,* the SJAR failed to mention appellant's conviction of two additional charges. The Court found that the convening authority's action did not approve the findings of guilty to those offenses. *Diaz,* 40 M.J. at 345. However, an error in the SJAR reporting the date of an offense was inconsequential in reflecting the nature of a drug abuse offense. *United States v. Ross,* 44 M.J. 534, 537 (A.F.Ct. Crim.App.1996).

This case presents yet another twist to the impact of an error in the SJAR on the convening authority's action. What happens when the convening authority approves excess language in an offense, that language was not part of the charged offense, and the members did not make a finding on that language? Obviously, the convening authority can not approve an offense that was not tried, so it is axiomatic that we can not approve a conviction for that portion of the offense. Thus, unlike *Diaz* and *Ross* where the courts were trying to determine what was approved, we acknowledge that the approval of that portion of the specification was a nullity and can not stand. But, this decision need not impact the approved finding on the remaining portions of that charge which were correctly reported.

However, before correcting the error at this level we must determine if the error has harmed the appellant. Normally, an error in the SJAR requires that we return the case for a new action. A new action is not required unless the error prejudiced appellant. *United States v. Hill,* 27 M.J. 293 (C.M.A.1988), *United States v. Leininger,* 25 M.J. 746, 748 (A.C.M.R.1987). Here, the members heard the case without any reference to the excepted language, so there was no prejudice to appellant's adjudged sentence. The issue is whether it impacted the convening authority's action on sentence. The government urges that the kissing offense was minor compared to the other allegations contained in the indecent act specification and had no impact on the convening authority's action. Under the narrow circumstances of this case, we agree. We believe that absent this language in the specification, the convening authority would have approved the same sentence. *See United States v. Peoples,* 29 M.J. 426 (C.M.A.1990). Furthermore, we are convinced that the approved sentence is appropriate. *United States v. Jones,* 39 M.J. 315, 317 (C.M.A. 1994).

## DECISION

We order that the appellant receive 381 days credit for the confinement served between June 25, 1993 and July 10, 1994. We further order that the language of Charge II, specification 1 in the action and the general court-martial order be rewritten to delete the words "kissing her on the mouth while inserting his tongue in her mouth." We approve only those portions of the specification excluding the excepted language.

Accordingly, the findings, as revised, and the sentence, as reassessed, are correct in law and fact and are

AFFIRMED.

Chief Judge DIXON and Judge STARR concur.