UNITED STATES, Appellee,

v.

Michael R. JOHNSON, Staff Sergeant,
U.S. Army, Appellant.

No. 97–0653.
Crim.App. No. 9500389.

U.S. Court of Appeals for
the Armed Forces.

Argued May 13, 1998.

Decided Oct. 1, 1998.

For Appellant: *Captain Paul J. Perrone* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Michael L. Walters, Captain Leslie A. Nepper,* and *Captain Mark A. Bridges* (on brief).

For Appellee: *Captain Joel A. Novak* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch, III, Captain Elizabeth N. Porras,* and *Captain Robert F. Resnick* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by a panel comprised of officer and enlisted members of sodomy, indecent acts, and carnal knowledge with his 13–year–old daughter, in violation of Articles 125, 134, and 120, Uniform Code of Military Justice, 10 USC §§ 925, 934, and 920, respectively. Appellant was sentenced to a bad-conduct discharge, 3 years' confinement, and reduction to the lowest enlisted grade. The convening authority reduced the confinement portion of the sentence to 18 months but otherwise approved the sentence. The Court of Criminal Appeals affirmed the findings and sentence. 45 MJ 666 (1997).

We granted review of the following issues:

I

WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS ERRED IN FINDING NO PREJUDICE IN THE ADMISSION OF AJ'S OUT–OF–COURT STATEMENT (PROSECUTION EXHIBIT 4) UNDER THE RESIDUAL EXCEPTION TO HEARSAY PURSUANT TO MIL. R.EVID. 803(24), DESPITE THE COURT'S FINDING THAT THE MILITARY JUDGE ERRED AS A MATTER OF LAW IN FAILING TO CONSIDER RELEVANT NONCONTEMPORANEOUS EVIDENCE SURROUNDING THE MAKING OF SAID STATEMENT.

II

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ALLOWING INTO EVIDENCE DOCTOR PLAYL'S TESTIMONY AND REPORT (PROSECUTION EXHIBITS 3 AND 3A) AND ALAN OMO'S TESTIMONY CONCERNING UNCHARGED MISCONDUCT IN THE FORM OF PRIOR SEXUAL ABUSE ALLEGATIONS MADE

BY APPELLANT'S OLDER DAUGH-
TER.

We hold that AJ's statements were properly admitted under Mil.R.Evid. 803(24), Manual for Courts–Martial, United States (1995 ed.), the residual hearsay rule. We also hold that SJ's statements were properly admitted into evidence under Mil.R.Evid. 403 and 404(b).

### FACTS

In 1994, appellant's daughter, AJ, reported to a school counselor that appellant was physically abusing her. Her allegations at that time consisted of incidents where she had been slapped in the face and beaten on the buttocks with a board. The school counselor, according to procedure, reported the incident to Mr. Daniel Wilson, a social worker for Social Work Services at Fort Sam Houston.

Mr. Wilson met with AJ for about 40 minutes to discuss her account of physical abuse. In this interview, he routinely asked AJ if there was "anyone sexually inappropriate with" her? AJ asserted voluntarily that her father, appellant, on 15 to 20 separate occasions, "would come into her bedroom, would fondle her, [and] would rub his penis on her thigh and buttocks." She also offered details of the abusive incidents and information that "he would a lot of times, leave five dollars on her dresser" the next morning.

After this interview, Special Agent (SA) Deborah McMahon of the Criminal Investigation Command (CID) and Mr. Tom England of Child Protective Services for the State of Texas were called in to interview AJ with Mr. Wilson. AJ gave consistent, voluntary statements to SA McMahon and Mr. England about the sexual abuse and recited a specific incident where she awoke to find appellant laying on top of her with his penis in her mouth committing oral sodomy on her. This incident ended when her mother walked into the room and demanded that appellant leave AJ's bedroom. AJ's mother later gave a statement corroborating this event. Approximately 2½ hours after the second inter-

view, AJ read, initialed, and signed a sworn statement. In the statement, AJ claimed that appellant had dark patches on his genitalia. However, a government search found no such discoloration.

Three days after signing this sworn statement, AJ recanted her allegations of abuse. SA McMahon testified that AJ stated she changed her statement because her father, breaking a no-contact order issued to him by his commander, had convinced her to recant. In addition, Ms. Geeslin, a social worker assigned to the case, testified that AJ feared being moved from foster home to foster home if her father was found guilty. She also concluded that AJ was getting no support from her family and was unhappy with the discipline in the group home where she had been living since the allegations.

To bolster its case at trial, the Government offered testimony from SA Omo and Dr. Playl regarding allegations and statements of sexual abuse made by appellant's older daughter, SJ, 6 years earlier. These statements were later recanted by SJ after her father violated a no-contact order and returned to the family home.[1] The military judge, over defense objection, admitted this evidence to show appellant had an intent or plan to abuse his daughters.

At trial, AJ testified that she had fabricated the abuse because she was angry at her father for disciplining her. She also asserted that, in the initial interview, no one seemed interested in her claims of physical abuse. She claimed that it was only after the interviewers reminded her of SJ's allegations of sexual abuse that she fabricated her own sexual abuse to gain their interest. She additionally testified that she notified one of the social workers on the evening her statement was sworn that she wished to recant, but was told that she was "in denial."

### Mil.R.Evid. 803(24) (Issue I)

In his first assignment of error, appellant argues that the military judge erroneously admitted AJ's sworn statement of sexual

---

1. This no-contact order was issued and violated 6 years before the incident with AJ and the issu-   ance of the second no-contact order in 1994.

abuse into evidence. The judge admitted this statement into evidence under Mil. R.Evid. 803(24), the "residual hearsay" rule. Mil.R.Evid. 803(24) exempts from the prohibition against hearsay the following:

> A statement not specifically covered by any of the ... [other] exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

■ We have held that, to admit a statement under the residual hearsay rules the declaration must be material, necessary, and have indicia of reliability. *United States v. Pollard,* 38 MJ 41, 49 (1993). The materiality and necessity of AJ's statement have not been challenged by appellant, and no confrontation question has been raised. Therefore, the issue that remains in contention is *how* the trial judge determined that AJ's statement had the necessary "indicia of reliability."

The Supreme Court in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), addressed not only how to balance the Confrontation Clause with exceptions to the hearsay rule, but also how courts should determine whether a statement carries indicia of reliability. In *Wright,* the Government sought to introduce at trial statements made to a doctor by a little girl regarding sexual abuse at the hands of her mother. *Id.* at 810–11, 110 S.Ct. 3139.

On appeal, Wright asserted that her Sixth Amendment right to confrontation was violated because the girl was unavailable to testify and her statements were unreliable. *Id.* at 812, 110 S.Ct. 3139. The Court noted that the Confrontation Clause does not necessarily exclude hearsay statements from trial. *Id.*

at 814, 110 S.Ct. 3139. Citing the earlier case of *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court reiterated the "general approach" courts should take when reconciling a hearsay statement and the Confrontation Clause: First, the hearsay statement must be necessary, as it is when a declarant is unavailable, and second, the statement must bear "adequate indicia of reliability." 497 U.S. at 814, 110 S.Ct. 3139. The Court identified two ways to determine whether a statement is reliable: Either the statement falls within a firmly rooted hearsay exception or it comes with "particularized guarantees of trustworthiness." *Id.* at 816, 110 S.Ct. 3139.

■ Additionally, the Supreme Court held that corroborating evidence cannot be used as guarantees of trustworthiness when a witness is unavailable to testify. *Id.* at 823, 110 S.Ct. 3139. This Court has interpreted this holding to permit the use of corroborating evidence when the witness *is* available to testify. *See United States v. Martindale,* 40 MJ 348, 349 (1994); *United States v. McGrath,* 39 MJ 158 (1994).

■ In the case at bar, the military judge erroneously believed that he could only consider the circumstances surrounding the making of AJ's hearsay statements to determine trustworthiness. He stated:

> As I read the law, the inherent trustworthiness of a hearsay statement to be admitted under the residual hearsay exception can only be determined by circumstances existing at the time that the statement was taken, and it's not permissible to look at subsequent events in evaluating the trustworthiness of those circumstances at the time the statement was taken.

Appellant argues that because AJ was available to testify, it was error for the military judge to fail to consider noncontemporaneous evidence before determining the statement's trustworthiness.

The case most on point in our Court, and a relative carbon copy of the issue in the current matter, is *United States v. Kelley,* 45 MJ 275 (1996).[2] *Kelley* was convicted of

---

**2.** The *Kelley* opinion was issued 7 months after the opinion of the Court of Criminal Appeals was released in the current case.

committing indecent acts with his 6–year–old daughter, CK. On appeal, Kelley argued that the military judge erred in admitting, under Mil.R.Evid. 803(24), statements made by CK to a babysitter. Specifically, Kelley argued that the judge erred in determining the trustworthiness of CK's declarations by limiting his analysis to the circumstances surrounding the making of the statement, rather than considering those facts that tended to undermine the statement's credibility. This Court held as follows:

> In *United States v. McGrath*, 39 MJ 158 (1994), we held that a military judge has discretion to consider corroborating evidence beyond the circumstances of the declaration once confrontation is satisfied. In *United States v. Martindale*, 40 MJ 348, 349 (1994), we recognized that *Idaho v. Wright* ... imposed a more restrictive rule than Mil.R.Evid. 803(24), and that "it was permissible" to consider other evidence if confrontation was waived. Here we find no abuse of discretion by the military judge in limiting his reliability assessment to the circumstances surrounding the declaration. While it would have been *per-*

*missible* for him to consider extrinsic circumstances, *he was not required to do so.*

45 MJ at 281 (emphasis added); *see also United States v. Ureta*, 44 MJ 290, 296 (1996); *United States v. Clark*, 35 MJ 98, 107 (CMA 1992) (Crawford, J., concurring).

■ As stated above, a military judge is not required to look to all circumstances. It is permissible for the judge to limit his consideration to those circumstances surrounding the making of the statement. Accordingly, we hold that the judge in the present case was not required to examine all of the corroborating evidence. However, even if the military judge had considered all noncontemporaneous circumstances, the statements clearly are admissible because the positive indicia of reliability are overwhelming.[3]

In addition to complaining that the trial judge failed to look at corroborating circumstances, appellant also contends that the trial judge erred by failing to consider those circumstances that cast doubt upon the trustworthiness of AJ's statement. At trial, the military judge concluded that

---

**3.** According to the opinion below:

Evidence tending to impeach the trustworthiness of A's hearsay accusation includes: A's testimony that her sexual abuse allegation was a lie; A's testimony that she actually recanted her complaint to a Major Brown the same night as she made her sworn written statement, but that Major Brown told her she was in denial; A's inaccurate description of her father's penis (one of the noteworthy "details" of the complaint); appellant was not shown to have a sexually transmitted disease (chlamydia) that A was found to have the week after her complaint; A's sexual knowledge (another "detail" of such complaints) was gained, at least in part, from her precocious sexual activities with others; A knew that her sister S made and recanted a similar complaint approximately six years before; A stated that her initial attempts to recant her statement to Special Agent (SA) McMahon were rebuffed because of SA McMahon's personal sexual abuse experience; and A subsequently filed false sexual abuse allegations against one of the Child Protective Services Specialists handling her case.

Conversely, evidence tending to corroborate the trustworthiness of A's hearsay accusations includes: A alleged that her mother interrupted one of the sexual acts; A's mother confirmed witnessing such a sexual act to two separate witnesses; SA McMahon testified that

A told her that the sexual abuse allegation was true, but she was recanting because the appellant told her the abuse would stop, and A wanted to end problems in the family; while the multi-disciplinary team was aware of S's earlier sexual abuse allegation when interviewing A, they were not aware of the specific facts alleged in S's complaint; A's allegation of sexual abuse was virtually identical to S's earlier allegation; both A and S testified that they had never discussed the substance of S's allegation; A testified that she was not aware of the facts alleged in S's sexual abuse allegation; A persisted in her initial complaint even after being advised how the investigation would proceed and that the inquiry could lead to her, or her father, being removed from the family home; after making the sexual abuse allegation A was removed from the home and placed in a temporary foster home and then in a group home; A was unhappy being away from home and with the group home's discipline, testified that her mother told her that she could remove all her belongings from the family quarters, and was fearful of being shuttled between a series of temporary homes; and A admitted making a false sexual abuse complaint against one of her Child Protective Services specialists to interfere with the investigation after A attempted to recant her sworn signed statement.

45 MJ at 668–69.

the allegation was initially volunteered by [AJ] in response to the questions of Mr. Wilson; ... her allegations were not taken or elicited from her solely by law enforcement agents; ... the statements weren't coerced; ... [AJ1] understood and acknowledged the truthfulness of the statements; ... there was a several hour lapse before she appeared at the [CID] office and executed a sworn written statement; ... and [AJ] knew the contents of the statement and swore to its truthfulness.

■ We have never directly addressed the issue of balancing positive and negative indicia of reliability. Though it has been implicit in our prior decisions, we now explicitly hold that courts should consider both those indicia that add to and detract from a statement's reliability when determining its admissibility under the residual hearsay rules.

For instance, in *McGrath*, this Court noted that, although the Supreme Court had not "definitively ruled on whether corroboration is one of the circumstances which may be used to assure the trustworthiness of hearsay," we had "sided with those [lower] courts holding that corroboration by other evidence is *one of the means* by which hearsay evidence can be tested for trustworthiness." 39 MJ at 166 (emphasis added). If corroboration is one factor with which a military judge may make such a determination, then it is implied that a judge should consider those factors of non-corroboration in balance. To come to any other conclusion would be to ignore the fact that "reliability must be very high indeed to satisfy the residual hearsay exceptions." *Id.* at 167 n. 10.

We find the Drafters' Analysis of Mil. R.Evid. 803(24) persuasive support for this approach to "equivalent circumstantial guarantees of trustworthiness." It suggests that,

> [b]ecause the general exception found in Rule 803(24) is basically one intended to apply to highly reliable and necessary evi-

dence, recourse to the theory behind the hearsay rule itself may be helpful.... [C]ounsel may wish to examine the hearsay evidence in question to determine how well it relates to the four traditional considerations usually invoked to exclude hearsay testimony: how truthful was the original declarant? to what extent were his or her powers of observation adequate? was the declaration truthful? was the original declarant able to adequately communicate the statement? Measuring evidence against this framework should assist in determining the reliability of evidence.

Manual, *supra* at A22–53.

Our holding today should not be read as inconsistent with our decision in *Kelley*. We are here only clarifying that, when military judges use their discretion to consider noncontemporaneous circumstances, they should not be myopic and consider only those which favor a finding of reliability. Instead, they should look at the "totality of [the] circumstances," as was suggested by the Court of Criminal Appeals in *Kelley*. *See* 42 MJ at 744;[4] *see also Wright*, 497 U.S. at 819–20, 110 S.Ct. 3139. Furthermore, in *United States v. Martindale*, 30 MJ 172, 175 (1990), this Court did endorse consideration of "the entire record," implying a similarly balanced and broad approach.

This Court is not alone in weighing both the positive and negative indicia of reliability. Many federal Courts of Appeals also look to both circumstances to determine the admissibility of statements under the residual hearsay rules, Fed.R.Evid. 803(24), *see, e.g., United States v. Sinclair*, 74 F.3d 753 (7th Cir. 1996); *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147 (3rd Cir.1995); *United States v. NB*, 59 F.3d 771, 776–77 (8th Cir.1995); and Fed.R.Evid. 804(b)(5); *see, e.g., United States v. Accetturo*, 966 F.2d 631 (11th Cir. 1992); *United States v. Lang*, 904 F.2d 618 (11th Cir.1990); *United States v. Snyder*, 872

---

4. Though we focused more on the question of contemporaneous versus noncontemporaneous statements in our opinion in *Kelley*, the appellant had raised an issue as to the military judge's lack of consideration of negative attributes of reliability. 45 MJ at 280. This Court accepted the alternative argument of the Court of Criminal Appeals that, even if the military judge had considered the noncontemporaneous, negative factors as proposed by the appellant, the balance of the positive and negatives would have resulted in the same outcome, making it harmless error. *Id.* at 281, citing 42 MJ at 775.

F.2d 1351, 1355–56 (7th Cir.1989); and *United States v. Roberts*, 844 F.2d 537, 545–46 (8th Cir.1988).

As we stated earlier, the positive circumstances clearly overwhelmed the negative circumstances, even considering those that were noncontemporaneous.[5] Therefore, weighing all of these, the Court of Criminal Appeals found AJ's statements contained the necessary guarantees of trustworthiness. We agree.

### *Mil.R.Evid. 404(b) (Issue II)*

■ Issue II addresses appellant's complaint that the military judge abused his discretion by admitting evidence concerning uncharged sexual abuse of appellant's older daughter, SJ.[6] The evidence was offered through the testimony of SA Omo, a CID agent at Fort Polk, and Dr. Playl, the pediatrician who examined SJ for physical signs of sexual abuse.

Specifically, appellant argues that the testimony did not fit into any exception of Mil.R.Evid. 404(b), and that even if the evidence was admissible under 404(b), it was "more prejudicial than probative" under Mil.R.Evid. 403. We hold that the military judge did not abuse his discretion in this instance, and that the testimony offered was correctly admitted under Mil.R.Evid. 404(b)[7] and 403.

SA Omo offered testimony concerning two statements he took relating to this case. The first involved an interview conducted with appellant in which appellant waived his rights and initially denied any abuse had taken place. However, as the interview continued, appellant admitted that he had touched his daughter. SA Omo also recounted the statements gathered in his interview of SJ concerning her allegations of abuse. Despite the investigation commenced by SA Omo, no charges were ever filed against appellant in regard to this incident. Dr. Playl's testimony recounted SJ's statement of the alleged abuse and explained the results of the examination that ensued.

■ In *United States v. Lake*, 36 MJ 317, 322 (1993), we stated that a military judge's decision to admit evidence under Mil.R.Evid. 403 should not be overturned on appeal absent a clear abuse of discretion. "To reverse for 'an abuse of discretion involves far more than a difference in ... opinion.... The challenged action must ... be found to be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous" in order to be invalidated on appeal.'" *United States v. Travers*, 25 MJ 61, 62 (CMA 1987), quoting *United States v. Yoakum*, 8 MJ 763 (ACMR 1980), *aff'd on other grounds*, 9 MJ 417 (CMA 1980).

■ Our recent decision in *United States v. Miller*, 46 MJ 63 (1997), which decided a similar question of admissibility of uncharged misconduct under Mil.R.Evid. 404(b), is a helpful guide to the case now under our consideration. In *Miller*, the appellant was convicted of molesting an 8-year-old boy. At trial, the Government introduced evidence under Mil.R.Evid. 404(b) of Miller's similar misconduct with K, who was 9 years old at the time of the alleged abuse. Although Miller had been tried and acquitted of charges stemming from that incident, we held that the military judge did not abuse his discretion by allowing K to testify to the prior acts. Regarding the purpose of allowing prior wrongs or acts into evidence under 404(b), we held:

> The first sentence of Mil.R.Evid. 404(b) prohibits propensity evidence. Then the rule states that evidence of "crimes, wrongs, or acts" is admissible "for other purposes, such as proof of motive, opportu-

---

5. *See* n. 3, *supra*.

6. Six years before AJ brought her allegations of sexual abuse to light, her older sister, at the time 10 years old, made accusations of similar abuse by sending a note to her teacher. After receiving this note, her teacher notified SA Omo and Dr. Playl.

7. Mil.R.Evid. 404(b) reads in pertinent part:

> *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

nity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," rather than for proof of character. "Accordingly, the sole test under Mil. R.Evid. 404(b) is whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses."

46 MJ at 65, quoting *United States v. Castillo,* 29 MJ 145, 150 (CMA 1989).

In appellant's situation, the military judge carefully analyzed the evidence under Mil. R.Evid. 404(b) and determined that the Government had proven the testimony of SA Omo and Dr. Playl was being offered "to show a pattern of behavior of the accused which I take to be a design or system...."

■ In addition to discussing proper purposes, *Miller* also reiterated the test this Court uses to determine the admissibility of uncharged misconduct. To be admissible the evidence must

(1) reasonably support a finding that an accused committed prior crimes, wrongs, or acts; (2) make a fact of consequence more or less probable; and (3) possess probative value that is not substantially outweighed by its danger for unfair prejudice.

46 MJ at 65, citing *United States v. Reynolds,* 29 MJ 105, 109 (CMA 1989). The testimony of SA Omo and Dr. Playl regarding SJ's statements satisfied this test.

The evidence provided by these two witnesses of SJ's sexual abuse could reasonably support a finding that appellant committed the alleged acts. SA Omo testified to many indicia of SJ's truthfulness in her accusation, including the following: SJ used language that was uncommon to a child her age by stating that her father "placed his private between [her] legs" and "wet, sticky stuff" came out; she explicitly stated that her father had "touched her, fondled her, and had placed his penis inside of her vagina, and had also, at times, made her manually masturbate him." SJ used anatomically correct dolls to show SA Omo different positions; neither

she nor her mother identified any reason SJ would have for lying; indeed, appellant admitted he did not think SJ would lie about this matter; SA Omo established early on in the interview that SJ knew the difference between a lie and the truth; and, finally, leading questions were avoided in the interview with SJ "so as not to implant anything into the child's mind."

Similarly, Dr. Playl, testifying from notes made during the examination, stated that SJ used words that were uncommon for a child her age and that her allegations were explicit, stating that her father had been "touching her private parts" with his fingers and his penis. Dr. Playl also testified that SJ had a fresh tear—or a tear without connective tissue—in her hymen at the time of the examination, which would indicate penetration by some object. Appellant and his wife stated that he was in the field the 2 weeks before the doctor's examination; however, Dr. Playl additionally testified that it takes 2 to 4 weeks for connective tissue to begin growing. These factors certainly add support to the Government's contention that appellant had committed similar wrongs on his older daughter years before.

Further, the evidence offered by the two witnesses does tend to make SJ's alleged abuse more probable than if the evidence had not been introduced. The military judge, after carefully considering the evidence, stated the following:

[The evidence presented through the hearsay statements] has established its tendency to show the intent of the accused ... that is, negation of accident, misadventure, or causality ... in the conduct which is alleged in this case; and finally a common scheme or plan between the two incidents. As such, the 1988 incident [involving SJ], considered on those bases [sic], is clearly relevant....

This Court in *United States v. Munoz,* 32 MJ 359 (1991), held that there was no abuse of discretion in admitting testimony of Munoz's older daughter concerning prior sexual abuse at a trial for similar offenses perpetrated on a younger daughter. The Court

found it compelling that the military judge had considered

> significant elements of concurrence between the uncharged acts and the charged acts which suggested a common plan.... The common factors were the age of the victim, the situs of the offenses, the circumstances surrounding their commission, and the fondling nature of the misconduct. On this basis we hold that the military judge did not abuse his discretion in concluding that all the uncharged misconduct was "probative of a plan on appellant's part to sexually abuse his children."

*Id.* at 363–64 (internal citation omitted), citing *United States v. Mann,* 26 MJ 1, 5 (CMA 1988).

The statements given by SJ and AJ are very similar. Both statements detail a pattern of abuse, beginning in the children's preteen years, that started with fondling, progressed to masturbation and oral sodomy, and ultimately culminated in partial penetration. Also, in both instances, the girls' statements were recanted after appellant violated a no-contact order and spoke with his daughters. Because of the similarities between the two statements, SJ's statement was properly introduced to show a plan or scheme on the part of appellant to abuse his daughters.

Finally, the question of whether the probative value of the evidence is substantially outweighed by its danger for unfair prejudice was also given thoughtful consideration by the military judge, who stated:

> Now, of course, ... I'm required to do a balancing under [Mil.R.Evid.] 403, and I am therefore ruling that the probative value of this evidence is not outweighed by the danger of unfair prejudice in this case. I would say that recognizing that, at this time, the allegation made by [SJ] in 1988 has been recanted. My analysis of this is that, if the factfinder ... may either choose to believe or not believe this earlier evidence and ... if this earlier evidence is not believed then there is and could be no prejudice.

We agree with the military judge that, under these facts, the probative value of these statements was not outweighed by any prejudice they may have had. As then-Judge Cox noted in *Munoz,* 32 MJ at 366, "Unfortunately, crimes of [sexual abuse] are committed in secrecy and privacy.... Where the evidence of *similar* sexual deviant behavior is proved by the Government, it is admissible against an accused." (Citations omitted.) Therefore, we hold that appellant's prior uncharged misconduct was admissible under Mil.R.Evid. 403 and 404(b).

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge EFFRON concur.

GIERKE, Judge (concurring in part and in the result):

With respect to Issue I, I agree with the majority's conclusion that the evidence was properly admitted. In *United States v. Kelley,* 45 MJ 275 (1996), this Court held that a military judge is not required to consider extrinsic evidence supporting or contradicting the reliability of the evidence, but may do so when the accused's right to confrontation has been satisfied. I write separately because I disagree with the majority's parameters for reviewing a military judge's discretion. I cannot unqualifiedly agree with the majority's broad extension of *Kelley,* announcing that a military judge "should consider both those indicia that add to and detract from a statement's reliability when determining its admissibility." 49 MJ at 472.

In my view, the majority's rule creates more problems than it solves. The rule as stated is unworkable and unwise, and it mingles the closely related but distinct concepts of reliability of the hearsay and credibility of the witness.

Mil.R.Evid. 803(24) does not require military judges to believe residual hearsay testimony; it only requires them to find that it has the same "circumstantial guarantees of trustworthiness" as other admissible hearsay evidence. If we require military judges to balance all corroborating evidence against all contradictory evidence, then we are substituting a judge's determination of the credibil-

ity of a witness for an analysis of the admissibility of residual hearsay. I am unwilling to require such an approach.

If military judges "should" consider all contradictory evidence, as the majority suggests, arguably they must wait until the accused has an opportunity to contradict the evidence by testifying. Thus, the majority's rule could require a military judge to wait until the conclusion of the case before ruling on admissibility, or at least agree to reconsider the ruling after both sides have rested.

My views are as follows:

(1) I agree with the majority that, under *Kelley,* the military judge is not required to consider extrinsic evidence adding to or detracting from the reliability of the proffered residual hearsay.

(2) I disagree with the majority that the military judge *should* consider extrinsic evidence. In my view, under *Kelley* the military judge *may,* in his discretion, consider extrinsic evidence if the accused's right to confrontation has been satisfied.

(3) I agree with the majority that, if the military judge exercises his discretion to consider extrinsic evidence, he should consider evidence supporting reliability as well as evidence detracting from reliability. I believe, however, that the parameters for reviewing a military judge's ruling should be limited. We should review a military judge's exercise of discretion based on the evidence before him at the time of the ruling, not on the evidence before the trier of fact at the end of the trial on the merits. *See United States v. Miller,* 46 MJ 80, 84 n. 2 (1997) ("Normally, the correctness of a judge's ruling admitting or excluding evidence is to be assessed in light of the evidence of record before him at the time of the ruling."). If the defense chooses not to disclose contradictory evidence intended to be presented later in the trial during the defense case-in-chief, *e.g.,* the accused's testimony denying guilt or asserting bias, then, in my view, it does so at its peril. Under such circumstances, I would not fault a military judge for not considering contradictory evidence later revealed in the defense case, nor would I fault a military judge for refusing to reconsider the earlier ruling on admissibility and for submitting the credibility issue to the trier of fact.

I agree with the majority that the decision of the court below should be affirmed. Accordingly, I concur in the result.

SULLIVAN, Judge (concurring in the result):

I agree with the military judge that he could not legally consider circumstances independent of the making of an out-of-court statement for the purpose of that statement's admission under the residual hearsay exception of Mil.R.Evid. 803(24). *See United States v. Kelley,* 45 MJ 275, 282 (1996) (Sullivan, J., concurring in part and in the result and dissenting in part); *United States v. Martindale,* 40 MJ 348, 349 (CMA 1994) (Sullivan, C.J., dissenting); *United States v. McGrath,* 39 MJ 158, 169 (CMA 1994) (Sullivan, C.J., dissenting). Accordingly, I disagree with the majority's conclusion that the military judge erred when he refused to consider evidence of such circumstances proffered by the defense against the admission of the Government's hearsay evidence in this case. *See also Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (independent corroborating circumstances may not be considered in admission of residual hearsay).

The majority's position in this case and its predecessors (*Kelley, Martindale,* and *McGrath* ) is not supported by federal case law. The Mil.R.Evid. 803(24) question concerning the permissible guarantees of trustworthiness which may be considered where the out-of-court declarant testifies is not particular to our Court and authority on it goes both ways. *See United States v. Dunford,* 148 F.3d 385, 393 (4th Cir.1998) (total context in which the statements were made); *United States v. Grooms,* 978 F.2d 425, 427 (8th Cir.1992); *see also Crespin v. State of New Mexico,* 144 F.3d 641, 648–49 (10th Cir.1998); *cf. United States v. Valdez–Soto,* 31 F.3d 1467, 1471 (9th Cir.1994). Even commentators disagree on this question. *See* C. Mueller & L. Kirkpatrick, 4 *Federal Evidence* § 475 at 682–83 (2d ed. 1994); *cf.* J. Weinstein & M. Berger, 5 *Weinstein's Federal*

*Evidence* § 807.03[2][b] (2d ed. 1998); S. Saltzberg, M. Martin, & D. Capra, *Federal Rules of Evidence Manual* 1945 (7th ed. 1998). However, I can find no court that solves this problem by granting *unlimited* discretion to a trial judge to determine whether outside corroborating or impeaching circumstances may be considered.

Unbridled discretion, as permitted by the majority of this Court in this case and *United States v. Kelley, supra,* suggests arbitrariness, not law. Here and in *Kelley,* where an accused sought to introduce into evidence circumstances not surrounding the making of the hearsay statement to show its lack of trustworthiness, this Court held that the military judge may preclude such defense evidence. However, in *United States v. McGrath* and *United States v. Martindale,* both *supra,* the majority held that the military judge can permit the Government to introduce evidence of corroborating circumstances independent of the making of the statement to support admission of evidence under the residual hearsay exception. Why is it okay for the prosecution, but not the defense, to introduce evidence of these circumstances? This Court should be equally just for both sides in evidentiary matters. *See* Art. 46, UCMJ, 10 USC § 846.