*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
Appellee/Cross-Appellant

**v.**

### Ralph J. HYPPOLITE II, Staff Sergeant
United States Air Force, Appellant/Cross-Appellee

**Nos. 19-0119 & 19-0197**
Crim. App. No. 39358

Argued May 22, 2019—Decided August 1, 2019
Military Judges: Charles E. Wiedie Jr. and Joseph S. Imburgia

For Appellant/Cross-Appellee: *William E. Cassara*, Esq. (argued); *Major Dustin J. Weisman* (on brief); *Lieutenant Colonel Anthony D. Ortiz.*

For Appellee: *Captain Michael T. Bunnell* (argued); *Colonel Julie L. Pitvorec, Lieutenant Colonel Joseph J. Kubler*, and *Mary Ellen Payne*, Esq. (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN and SPARKS, joined. Judge OHLSON filed a separate dissenting opinion.

———————————

Judge MAGGS delivered the opinion of the Court.

Under Military Rule of Evidence (M.R.E.) 404(b)(1),[1] evidence that an accused committed one offense is not admissible to prove that the accused had the propensity to commit another offense. But under M.R.E. 404(b)(2), such evidence "may be admissible for another purpose." In this case, the military judge who heard the pretrial motions (motions judge) and the military judge who presided at trial (trial judge) agreed on the application of M.R.E. 404(b)(1)

———————————

[1] The version of M.R.E. 404(b) in the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*) applies to this case because the court-martial occurred in March, May, and June 2017.

and (2). They ruled that evidence that Appellant[2] committed the offenses alleged in Specifications 1, 2, and 3 of the sole charge could be used to show that Appellant engaged in a plan or scheme of criminality encompassing not only those offenses but also the offenses alleged in Specifications 4 and 5 of the charge. The United States Air Force Court of Criminal Appeals (AFCCA), in affirming parts of the findings and the sentence, determined that the motions judge and the trial judge abused their discretion in making this evidentiary ruling but held that this error was harmless. *United States v. Hyppolite*, No. ACM 39358, 2018 CCA LEXIS 517, at *35–39, 2018 WL 5516681, at *12–13 (A.F. Ct. Crim. App. Oct. 25, 2018). We affirm the judgment of the AFCCA, but our reasoning is different. We conclude that the motions judge and trial judge did not abuse their discretion in their M.R.E. 404(b) ruling. We therefore do not reach the issue of prejudice.

## I. Background

Appellant was charged with five specifications of violating Article 120, UCMJ, 10 U.S.C. § 920 (2012). Specifications 1, 2, and 3 accused Appellant of committing abusive sexual contact by touching the genitalia of Senior Airman (SrA) RMW, SrA SAK, and Airman First Class (A1C) STK with the intent of gratifying Appellant's sexual desire when Appellant knew or reasonably should have known that these men were sleeping. Specifications 4 and 5 accused Appellant of committing abusive sexual contact and sexual assault, alleging that Appellant touched Airman (Amn) JCD's genitals and that he penetrated Amn JCD's mouth and anus with his penis, causing bodily harm to Amn JCD.[3]

---

[2] Staff Sergeant Ralph J. Hyppolite II is both an appellant and a cross-appellee in this case. For convenience, we will refer to him simply as "Appellant."

[3] At the time of trial, SrA RMW and SrA SAK had been promoted to the rank of Staff Sergeant (SSgt), A1C STK had left the Air Force, and Amn JCD had been promoted to the rank of Airman First Class. The charge sheet and the AFCCA use their ranks at the time of trial, however, we will use their ranks at the time of the alleged offenses. Appellant was an NCO SSgt at the time of the alleged offenses.

Prior to trial, Appellant moved to sever Specifications 1, 2, and 3 from Specifications 4 and 5. Appellant argued that evidence of the acts alleged in Specifications 1, 2, and 3 would not be relevant to Specifications 4 and 5 for any purpose. The motions judge disagreed, and denied Appellant's motion to sever the specifications. While recognizing that M.R.E. 404(b)(1) would make evidence of the acts alleged in Specifications 1, 2, and 3 inadmissible to prove that Appellant had the propensity to commit the acts alleged in Specifications 4 and 5, the motions judge concluded that the evidence was admissible under M.R.E. 404(b)(2) because "[e]ach specification is probative as to the other specifications on the issue of a common plan on the part of the accused."

In reaching this conclusion, the motions judge applied the Court's decision in *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989), which identified the following three questions regarding the standards for admitting evidence of uncharged misconduct:

> 1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts? *United States v. Mirandes-Gonzalez*, 26 M.J. 411 (C.M.A. 1988).
>
> 2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence? Mil. R. Evid. 401; *United States v. Ferguson*, [28 M.J. 104, 108 (C.M.A. 1989)].
>
> 3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"? Mil. R. Evid. 403; [S. Saltzburg et al., *Military Rules of Evidence Manual* 362 (2d ed. 1986 & 1988 Supp.)].

*Id.* at 109 (first and third alterations in original). The motions judge found that the first standard was satisfied by the proffered evidence. With respect to the second standard, the motions judge recognized that M.R.E. 404(b) would not permit the evidence to be admitted to show propensity but could be admitted to show that Appellant had acted pursuant to a "common plan." The motions judge reasoned:

> Evidence of a common plan has been held admissible under M.R.E. 404(b). *See United States v.*

*Munoz*, 32 M.J. 359 (C.A.A.F. 1991); and *United States v. Johnson*, 49 M.J. 467 (C.A.A.F. 1998).

> In this case, the common factors were the relationship of the alleged victims to the accused (friends), the circumstances surrounding the alleged commission of the offenses (after a night of drinking when the alleged victim was asleep or falling asleep), and the nature of the misconduct (touching the alleged victims' genitalia). The nature of the misconduct alleged in specification 5 is different than the other allegations but is alleged to have occurred in connection with the alleged touching of [Amn JCD's] genitalia. This court finds that each specification is relevant and probative as to the other specifications regarding the accused's common plan to engage in sexual conduct with his friends after they have been drinking or were asleep or falling asleep.

After arraignment, the motions judge was excused from the court-martial. A different military judge (trial judge) was detailed. Appellant elected to be tried by the trial judge without members.

At trial, the men identified as victims in the first three specifications testified that they had been friends or roommates of Appellant. They also testified that, in separate incidents, they had been drinking with Appellant, had retired for the evening, and then had fallen asleep. With varying degrees of certainty, they further testified that Appellant surreptitiously and without their consent, had touched their genitals after they had fallen asleep.

The testimony regarding the fourth and fifth specifications was similar but not exactly the same. The alleged victim, Amn JCD, testified that he knew Appellant in a professional context and that their relationship grew more relaxed and became more social over time, culminating in Appellant inviting Amn JCD to his house for a party. Amn JCD testified that after a night of drinking at the party, he became uncomfortably intoxicated and asked Appellant where he could sleep. Appellant offered his bed, so Amn JCD went to Appellant's room alone to sleep in Appellant's bed.

Amn JCD awoke when Appellant entered the room and lay down next to him. Appellant then asked Amn JCD if he had ever considered engaging in sex with a man. Amn JCD

told him that he had not and that he merely wanted to sleep. Appellant then touched Amn JCD's genitals over his clothing and repeated his inquiry to which Amn JCD repeated his response. This exchange was repeated three to four times. Amn JCD testified that he had no recollection of what happened immediately after that. But Amn JCD recalled that he subsequently became aware that Appellant's penis was in his mouth and then later that Appellant's penis was penetrating his anus. Amn JCD testified that he did not consent to this sexual activity.

At the close of evidence but before arguments on the findings, the trial judge and counsel for each side reopened the question of how the first three specifications might be relevant to the fourth and fifth specifications. Following a substantial discussion of the issue, the trial judge announced that he would not disturb the motions judge's ruling that evidence of the acts alleged in Specifications 1, 2, and 3 could be used to show a common plan under M.R.E. 404(b). The trial judge, however, indicated that he would "call it a 'scheme' instead of a 'common plan.'"

Because the court-martial did not include members, the ruling only affected what trial counsel and trial defense counsel properly could argue with respect to the findings and what the trial judge would consider in his deliberations. The trial judge also acknowledged that the existence or non-existence of a common plan was a fact to be decided. "[F]or the purposes of M.R.E. 404(b)," the trial judge explained, "the common scheme is certainly something that each side can argue."

In his argument on the findings, trial counsel first reviewed the evidence with respect to each offense and then concluded by addressing M.R.E. 404(b). He asserted that the evidence relevant to each specification showed a common scheme and thereby negated any defense of mistake. After summarizing the commonalities among the offenses, trial counsel advised the military judge:

> TC: . . . And, you can absolutely use those commonalities as you're looking at each of these fact patterns and deciding exactly what happened, as you're deciding if the accused is, in fact, guilty; that's what was going on.

> TC: The accused knew what he was doing, he knew.
> He knew what he was doing when he was doing it.
> He knew what he was doing after he did it. . . . He
> knows that it wasn't a joke. It wasn't a joke then. It
> wasn't a joke now.

During the defense's argument on the findings, trial defense counsel responded by arguing that the evidence was insufficient. Trial defense counsel also reminded the military judge not to consider any evidence of propensity, saying:

> DC: . . . Standing alone, the evidence on each and every one of these specifications, standing alone, as the law requires, the evidence on each and every one of these specifications has gaps that can only be filled in by propensity assumptions. Since Your Honor will not do that, you must find Sergeant Hyppolite not guilty on the charge and each of its specifications.

In reply, trial counsel expressed agreement that the trial judge could not consider propensity evidence and insisted that the Government was seeking to use evidence of each specification to show a common plan. "A scheme, yes," trial counsel asserted. "Not propensity. That's not what I'm arguing, a scheme, as is allowed under the law; that's exactly what this is and [how] we look at it."

The trial judge found Appellant guilty of Specifications 1, 3, 4, and 5, and not guilty of Specification 2. The trial judge subsequently sentenced Appellant to reduction to E-1, forfeiture of all pay and allowances, confinement for seven years, and a dishonorable discharge. The convening authority approved the adjudged findings and sentence.

On appeal, the AFCCA found the evidence factually insufficient as to Specification 1 and vacated the finding of guilty as to that specification. *Hyppolite*, 2018 CCA LEXIS 517, at *23–26, 2018 WL 5516681, at *8–9. The AFCCA also concluded that the motions judge and the trial judge had abused their discretion in applying the second prong under the *Reynolds* test, rejecting their conclusion that evidence of the sexual contacts alleged in Specifications 1, 2, and 3 made more probable a fact of consequence for Specifications 4 and 5. *Id.* at *18–22, 2018 WL 5516681, at *7–8. The AFCCA de-

termed that there was no common plan or scheme, explaining:

> In Specifications 1–3, Appellant acted secretively while his friends slept, whereas, in Specifications 4 and 5, Appellant initiated sexual contact with [Amn JCD] while [Amn JCD] was awake and aware of Appellant's presence and Appellant communicated Appellant's desire to engage in sexual activity with [Amn JCD].

*Id.* at *20, 2018 WL 5516681, at *7. The AFFCA, however, determined that the error was harmless after applying the factors that this Court considered in *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007). *Hyppolite*, 2018 CCA LEXIS 517, at *36–39, 2018 WL 5516681, at *12–13.

We granted Appellant's petition for review of the issue "[w]hether the military judge's erroneous admission of evidence regarding Specifications 1, 2, and 3 as a common plan or scheme for Specifications 4 and 5 was harmless." The Government then certified the following issue: "Did the Air Force Court of Criminal Appeals err when it found the military judge abused his discretion by ruling that the evidence regarding Specifications 1, 2, and 3 could be considered as evidence of a common plan or scheme for Specifications 4 and 5."

## II. Analysis

Evidence may be admissible for some purposes but not others. *See United States v. Phillips*, 52 M.J. 268, 271 (C.A.A.F. 2000). In this case, evidence regarding Specifications 1, 2, and 3 was certainly relevant and admissible to prove that Appellant committed each of these three specifications. But the question in this case is whether the trial judge—in following the ruling of the motions judge—abused his discretion in deciding that evidence regarding Specifications 1, 2, and 3 could also be considered for the purpose of proving Specifications 4 and 5. *Id.* at 272 (reviewing the decision of a military judge to admit evidence under M.R.E. 404(b) for an abuse of discretion).

We agree with the motions judge, the trial judge, and the AFCCA that our decision in *Reynolds*, 29 M.J. at 109, provides the correct framework for addressing this question.

We also agree that the first and third standards identified in *Reynolds* are satisfied. The issue in dispute is the second *Reynolds* standard: "What fact . . . of consequence is made more or less probable by the existence of this evidence?" *Id.* (alteration in original) (internal quotation marks omitted) (citations omitted). This standard can be met in this case only if the evidence at issue is not excluded by M.R.E. 404(b)(1) and is admissible for a proper purpose under M.R.E. 404(b)(2).

## A. M.R.E. 404(b)(1)

Both parties agree that the military judge could not consider the evidence of the acts alleged in Specifications 1, 2, and 3 as proof of Appellant's character for criminality or propensity to commit the kinds of crimes alleged in Specifications 4 and 5. M.R.E. 404(b)(1) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[4] Appellant, however, contends that the trial judge violated this prohibition. Appellant's argument is that even though the Government characterized the evidence as proof of a plan or scheme, the "true character of the evidence was propensity evidence." Under this view, if the trial judge considered the evidence at all, he must have violated M.R.E. 404(b)(1).

We disagree with Appellant's argument because we see nothing in the record to support his position. As described

---

[4] M.R.E. 413(a) (2016 ed.) creates an exception to M.R.E. 404(b)(1) by providing: "In a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant." Although M.R.E. 413(a) sometimes may allow a court to consider propensity evidence, the rule is limited by our decisions in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), and *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017). Those decisions prohibit using evidence of one charged offense as proof of another charged offense under M.R.E. 413. In this case, however, the motions judge and the trial judge did not rely on M.R.E. 413(a). As explained here, they also refused to consider the evidence admitted for the purpose of showing propensity.

above, trial defense counsel reminded the trial judge of the prohibition against propensity evidence during arguments on findings. Trial counsel agreed with this prohibition and insisted that the Government was arguing only that the evidence showed a plan or scheme, not propensity. The trial judge adopted the motions judge's written decision regarding M.R.E. 404(b), which repeatedly made clear that the evidence regarding Specifications 1, 2, and 3 could not be considered as evidence of propensity. The trial judge also invited both parties to argue about whether there was in fact a scheme. All of this leads us to the straightforward conclusion that the trial judge considered the evidence to the extent that it was proof of a scheme and did not consider the evidence to the extent that it might have been evidence of propensity.

## B. M.R.E. 404(b)(2)

Under M.R.E. 404(b)(2), while evidence of a crime, wrong, or other act may not be used to show character or propensity, it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." As the motions judge correctly recognized, we have previously held that one proper purpose of such evidence is to prove the existence of a plan or scheme. *United States v. Munoz*, 32 M.J. 359 (C.M.A. 1991); *United States v. Johnson*, 49 M.J. 467 (C.A.A.F. 1998). Trial counsel's argument was that the evidence admitted in connection with each specification proved Appellant's scheme of "engaging in unwanted sexual conduct with his friends after they have been drinking and are asleep or trying to go to sleep." Trial counsel further argued that proof of this scheme made a fact of consequence—whether the "accused knew what he was doing"—more probable.

In *Munoz*, the appellant was charged with committing indecent acts against one of his daughters. 32 M.J. at 360. The government sought to introduce evidence that the appellant previously had sexually abused his other daughters. *Id.* at 360–61. The military judge admitted the evidence under M.R.E. 404(b), finding it "to be probative of a plan on the accused's part to sexually abuse his children." *Id.* at 361. This Court recognized that the military judge found common

factors between the uncharged acts and the charged acts such as "age of the victim, the situs of the offenses, the circumstances surrounding their commission, and the fondling nature of the misconduct." *Id.* at 363. We agreed with this analysis and concluded that the military judge did not abuse his discretion. *Id.* at 363–64.

The facts in *Johnson* were similar. The appellant was charged with sodomy, indecent acts, and carnal knowledge with his younger daughter. 49 M.J. at 468. The government sought to introduce evidence that the appellant previously had sexually abused his older daughter. *Id.* at 469. The military judge ruled that the evidence was admissible because it showed "a pattern of behavior of the accused" which the military judge considered to be a "design or system." *Id.* at 474 (internal quotation marks omitted). This Court cited these common factors between the charged acts and the uncharged acts: "Both statements detail a pattern of abuse, beginning in the children's preteen years, that started with fondling, progressed to masturbation and oral sodomy, and ultimately culminated in partial penetration." *Id.* at 475. Following *Munoz*, this Court held that the military judge had not abused his discretion in admitting the evidence. *Id.*

In this case, the motions judge cited *Munoz* and *Johnson* and closely followed their analysis. The motions judge recognized common factors in the evidence proffered for each specification: "the relationship of the alleged victims to the accused (friends), the circumstances surrounding the alleged commission of the offenses (after a night of drinking when the alleged victim was asleep or falling asleep), and the nature of the misconduct (touching the alleged victims' genitalia)." The motions judge then identified a specific "common plan," namely, a plan "to engage in sexual conduct with his friends after they have been drinking and were asleep or falling asleep." The trial judge adopted the motions judge's conclusion.

Given that the motions judge and the trial judge properly understood the law and found facts supported by the record, the only question is whether they abused their discretion in applying the law to the facts. In *Johnson*, we addressed our standard of review of this issue: "To reverse for an abuse of discretion involves far more than a difference in . . . opin-

ion. . . . The challenged action must . . . be found to be arbitrary, fanciful, clearly unreasonable, or clearly erroneous in order to be invalidated on appeal." 49 M.J. at 473 (alterations in original) (internal quotation marks omitted) (citations omitted). Under this deferential standard, we see no abuse of discretion. Here, as in *Munoz* and *Johnson*, it was within the discretion of the two military judges to find a common plan or scheme based on the common factors among the specifications. Likewise, the trial judge did not abuse his discretion to the extent that he considered evidence of that common plan or scheme in assessing Appellant's knowledge and intent.

Appellant urges that we should adopt the AFCCA's conclusion that he could not have acted pursuant to a common plan or scheme in committing all of the charged offenses because Amn JCD, the alleged victim in Specifications 4 and 5, was awake and aware of Appellant's presence, while the alleged victims in Specifications 1, 2, and 3 were asleep. We disagree. As the Government points out, the trial judge could have found that, before Appellant entered the room, his scheme or plan was to take advantage of Amn JCD while he was sleeping. But when Appellant realized that Amn JCD was awake, in the Government's words, "he did not abandon his plan, he simply adjusted fire" by speaking first to Amn JCD.

On this point, the facts here are similar to the facts in *Reynolds*. The accused in *Reynolds* was charged with raping a woman in his quarters after bringing her there following a date. 29 M.J. at 105–06. In its case-in-chief, the government sought to introduce evidence that the accused previously had committed a similar offense against another woman, MG, arguing that the evidence "show[ed] a common scheme, plan, or design." *Id.* at 107–08. The military judge permitted MG's testimony for this purpose and instructed the panel members that they may consider the evidence for the limited purpose to show " 'a plan or design of the accused to achieve sexual intercourse with or without the consent of the other party.' " *Id.* at 108. The facts of the charged offense and the facts of the acts against MG in *Reynolds* were not exactly the same. One important difference was that MG managed to leave the accused's room when he started to assault her.

*Id.* at 107. But, the accused then followed MG in his car, picked her up and drove her a mile down the road where he stopped and raped her. *Id.* Despite this difference in how the attacks ultimately occurred, this Court found that the military judge did not abuse his discretion in concluding that the accused still had a common plan that was relevant in determining this intent. *Id.* at 110–11. We explained that "[t]he logical inference to be drawn from his similar acts was that he had worked out a system to put his victim into an unsuspecting and vulnerable position whereby he could engage in sexual intercourse with or without consent." *Id.* at 110. Likewise, in the present case, we conclude that the military judges did not abuse their discretion in deciding that Appellant had a common plan to take advantage of his sleeping friends even though it turned out that Amn JCD was not asleep when Appellant began the assault.

Appellant also argues that the Government, at trial, only sought to use the evidence presented in support of Specifications 1, 2, and 3 as proof of a common plan or scheme, and that the Government did not seek, nor did the military judges permit, the evidence to be used as proof of Appellant's intent. The Government responds that the common plan and scheme evidence was intent evidence because mistake of fact was the only issue in controversy. We agree with the Government. Indeed, trial counsel's argument on findings makes clear that the position of the Government was that proof of a common plan or scheme showed that Appellant "knew what he was doing" when he committed the charged offenses.

### III. Decision and Judgment

The certified question is answered in the affirmative. Because we conclude that the motions and trial judges did not abuse their discretion, we have no need to consider the issue assigned by Appellant regarding prejudice. The findings and sentence, as approved by the United States Air Force Court of Criminal Appeals, are affirmed.

Judge OHLSON, dissenting.

Unlike the majority, I believe the Air Force Court of Criminal Appeals (CCA) was correct in concluding that the trial judge and motions judge abused their discretion in this case. Further, I believe the judges' error materially prejudiced a substantial right of Appellant. Therefore, I respectfully dissent.

To be sure, there were some commonalities between the offenses charged under Specifications 1, 2, and 3 and the offenses charged under Specifications 4 and 5. The motions judge characterized them as follows: "[T]he accused's common plan [was] to engage in sexual conduct with his friends after they ha[d] been drinking and were asleep or falling asleep." In my view, however, there are two problems with the military judges' reliance on these commonalities as sufficient support for their determination that there was a common plan or scheme under the provisions of Military Rule of Evidence (M.R.E.) 404(b). First, these commonalities are notably generalized and superficial. And second, there are important differences between the factual underpinnings of the two sets of specifications, and these differences vitiate any significance attributed to the cited commonalities. Specifically, as noted by the CCA: "In Specifications 1–3, Appellant acted secretively while his friends slept, whereas in Specifications 4 and 5, Appellant [openly] initiated sexual contact with SrA JD while SrA JD was awake and aware of Appellant's presence and Appellant communicated Appellant's desire to engage in sexual activity with SrA JD." *United States v. Hyppolite*, No. ACM 39358, 2018 CCA LEXIS 517 at *20, 2018 WL 5516681 at *7 (A.F. Ct. Crim. App. Oct. 25, 2018).

In light of these factors, I believe the military judges' ruling in this case ran directly afoul of this Court's holding in *United States v. Morrison*, in which we stated that evidence of other acts "'must be *almost identical* to the charged acts' to be admissible as evidence of a plan or scheme." 52 M.J. 117, 122 (C.A.A.F. 1999) (emphasis added) (quoting *United States v. Brannan*, 18 M.J. 181, 183 (C.M.A. 1984)). Accordingly, I conclude that the military judges abused their discretion in this case. ("A military judge abuses his discretion … : (1) [if] the findings of fact upon which he predicates his ruling are not supported by the

evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010).)

In terms of prejudice, prior to trial Appellant moved to have Specifications 1, 2, and 3 severed from Specifications 4 and 5. Importantly, Appellant was raising a mistake of fact defense regarding Specifications 4 and 5, and Appellant argued that evidence of the acts alleged in Specifications 1, 2, and 3 could not be used by the trial judge to prove that Appellant had the propensity to commit the acts alleged in Specifications 4 and 5. Appellant further argued that evidence of the acts alleged in Specifications 1, 2, and 3 was not relevant to Specifications 4 and 5 for *any* purpose under M.R.E. 404(b). However, the motions judge and the trial judge ruled that evidence that Appellant committed the offenses alleged in Specifications 1, 2, and 3 could be used to show that Appellant engaged in a common plan or scheme with regard to Specifications 4 and 5. The trial judge subsequently convicted Appellant of Specifications 1, 3, 4, and 5.

Because the evidence was not admissible as a common plan or scheme—or for any other proper purpose under M.R.E. 404(b)—I am left with the conclusion that, despite the best intentions of the trial judge, the charged conduct in Specifications 1, 2, and 3 served as nothing more than propensity evidence in regard to the charged conduct in Specifications 4 and 5. *See United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (describing evidence improperly admitted under Fed. R. Evid. 404(b) as "propensity evidence in sheep's clothing"). This is impermissible. As we stated in *United States v. Hills*: "It is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent." 75 M.J. 350, 356 (C.A.A.F. 2016).

Pursuant to our holding in *Hills*, we must determine whether the Government has established that this error was harmless beyond a reasonable doubt by showing that there was no reasonable possibility that the error might have con-

tributed to the verdict. *See Hills,* 75 M.J. at 358. I do not believe the Government has met this burden.

At trial, the Government did not offer evidence to rebut Appellant's mistake of fact defense in regard to Specifications 4 and 5. Rather, during closing argument the Government relied on the improperly admitted M.R.E. 404(b) evidence to suggest that Appellant acted without SrA JD's consent and without a reasonable mistake of fact. Trial counsel argued that the trial judge could "absolutely use those commonalities [between the facts underlying Specifications 1, 2, and 3 and the facts underlying Specifications 4 and 5] as you're looking at each of these fact patterns and deciding exactly what happened, as you're deciding if the accused is, in fact, guilty." Therefore, in my view the Government is unable to demonstrate that there was no reasonable possibility that the military judge's error in admitting the evidence as a common plan or scheme contributed to the guilty verdict in this case.

For the foregoing reasons, I would answer the certified question in the negative by holding that the military judges' M.R.E. 404(b) ruling constituted an abuse of discretion, and I would answer the granted issue in the affirmative by holding that Appellant was prejudiced by this error. Accordingly, I would affirm in part and reverse in part the decision of the United States Air Force Court of Criminal Appeals, set aside the findings with respect to Specifications 4 and 5, and authorize a rehearing on those offenses and the sentence.